JULIA MARION, Appellant, *v.* CHARLES FARNAN, as Executor, etc., of MARY FARNAN, Deceased, Respondent.

*Services rendered to a relative, in the family — compensation, after the death of the person to whom the services were rendered.*

Between persons living together as members of the same family, bearing towards each other a family relation, no promise to pay for services rendered by one to the other will be implied, and no action will lie to recover compensation therefor, unless the services were rendered at the request of the party receiving them under a promise to pay therefor, or under such circumstances as show that the party receiving them expected to pay, and the other party to receive, compensation therefor, or that the services were rendered with the understanding between the parties that compensation therefor would be made by will.

*Semble*, that in respect to claims by children for services rendered to parents, the probability that the services were rendered under a promise of payment is stronger where the child has become of age, been away from home, established a business and supported himself, and has then returned upon the request of the parent, than where the child has continued to live with the parent after arriving at age, and has never had any other home.

APPEAL by the plaintiff, Julia Marion, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of Monroe county on the 23d day of February, 1892, upon a nonsuit granted at the Monroe Circuit.

*E. F. Turk*, for the appellant.

*J. A. Stull*, for the respondent.

HAIGHT, J.:

This action was brought to recover pay for services rendered, etc., to the defendant's testatrix in her lifetime. The defense was that the services were rendered by the plaintiff for her mother, as a member of her family.

Ordinarily, where one person renders services to another at his request, the law will imply a promise to pay therefor what the same is fairly and reasonably worth; but between persons living together as members of the same family, bearing towards each other a family relation, no promise to pay will be implied, and no action will lie unless the services were rendered at the request of the party receiving them under a promise to pay therefor, or under such circumstances as show that the party receiving them expected to pay, and the other to receive pay, therefor, or that the services were rendered with the understanding between the parties that compensation therefor would be made by will. (*Ulrich* v. *Ulrich*, 32 N. E. Rep. 606; *Lynn* v. *Smith*, 35 Hun, 295; *Robinson* v. *Raynor*, 28 N. Y. 494; *Shakespeare* v. *Markham*, 10 Hun, 311–322; *Reynolds* v. *Robinson*, 64 N. Y. 589; *Reid* v. *Farrar*, 6 N. Y. St. Repr. 199–201; *Willsey* v. *Franklin*, 10 N. Y. Supp. 833.)

Mary Farnan died on the 20th day of July, 1889, the owner of real estate in Charlotte, of the value of between $6,000 and $7,000. She had been an invalid for a number of years; had seven children, all of whom had left home and were supporting themselves. The plaintiff had become of age; left home; learned the trade of dressmaking, and in 1883 was engaged in business in Rochester for herself. The testatrix and her husband had broken up housekeeping, and had for some time been living at different places with their children. During the winters of 1882 and 1883, the testatrix lived with her son in Pennsylvania. In May, 1883, she returned to Charlotte and with the plaintiff commenced keeping house, herself, her husband and the plaintiff comprising the family. Her husband was aged, and unable to do anything toward their support; she was feeble in health, and had no means of support aside from her real estate, and the plaintiff by her work in dressmaking chiefly provided

them with support, doing all of the housework, including the washing, ironing, cooking, etc. In the spring of 1884 the defendant returned home at the request of the plaintiff, and thereafter continued to live in the family, and assisted in the support of his parents. In August, 1885, the plaintiff was married, and some time thereafter for about five months, kept house with her husband after which she and her husband returned to her mother's house, and there continued to live until her mother's death in 1889, doing all the housework, nursing and caring for her mother as she had previously done. The testatrix first made a will about the year 1880, in which she gave the use of her real estate to her husband during life, and upon his death she gave the same to her children. During the year 1885 she made another will, in which she devised one-third of her property to the plaintiff, and the other two-thirds to the defendant. On the 25th day of March, 1889, four months before her death, she made her last will and testament, which has been admitted to probate, devising all her property to the defendant. So far the facts appear from the direct testimony of the witnesses, and establish that the services were rendered by the plaintiff for her mother in her family.

Were such services performed at the request of the mother?

The plaintiff is not a competent witness as to any personal transaction or communication had in reference thereto with her deceased mother. As we have seen, in May, 1883, the plaintiff was engaged in her business of dressmaking in the city of Rochester, and the mother was living with her son in Pennsylvania; Margaret C. Farnan, wife of the son, with whom the mother was living, testified that her mother-in-law talked a great deal with her about going home to commence keeping house again, and often asked witness if she thought Julia (the plaintiff) would come and live with her; and when she got ready to go home she said that she would go home, and see if Julia would come home and stay with her, that she would like to go home and keep house, would like to have Julia come home and stay with her; she felt poorly, and did not feel able to do anything herself.

Mary Tiernan, a sister of the plaintiff and defendant, testified that her mother told her that she wanted Julia to come home, that she

# 386

## MARION *v.* FARNAN.

would go to housekeeping if Julia would come home and live with her; that she expressed this more than once, and was always speaking about wanting Julia to come home; that she left and went home, and that Julia thereafter left Rochester, went home and stayed with her mother until her death, excepting a few months that she was keeping house after her marriage.

From this evidence it appears that the testatrix left her son's residence in Pennsylvania, with the expressed intention of going home to see Julia, to see if she would come home and stay with her, if she should again go to housekeeping. It also appears that she returned home to Charlotte, with Julia, and recommenced housekeeping. No witness was present and heard what transpired between the testatrix and Julia; but we think from the testimony, the jury would have been justified in drawing the inference that the plaintiff returned with her mother, and commenced housekeeping at her request. Was it understood between the parties that the plaintiff should be compensated for her services by will or otherwise?

Upon this branch of the case much evidence was taken, to which we shall make but slight reference.

Sarah McKee testified to having a talk with the testatrix in reference to Julia, and heard her remark that she did not know how she would get along without Julia. That Julia had bought a black flannel dress for her; that she did not know how she would do without her; and said that she "would never lose anything by what she was doing for her."

Martha Vayon testified that at one time she had a conversation with the testatrix, in which "she said that Julia and Charlie should have the place." She said they were fixing up the house; Julia bought the windows, and Charlie clapboarded the house, and they painted it, and they two should have the property when she was through with it. * * * She said she would not know what to do without Charlie and Julia, that the old gentleman was not able to work."

Rosanna Ambrose also testified to having a conversation with her in July or August, after Julia first came home; that Julia was making a dress for her, when testatrix came in and commenced talking, saying, "I know who I am going to leave my property to; I am going to leave it to the children that stays at home and works and

supports me ; Julia has come home to stay and to work, and I would like to have Charlie come home ; and if he comes home and helps Julia support his father and I, at my death all I have got is theirs, I will divide it equal between them."

These, and many other expressions of like character, appear, some of which were made in the presence of Julia. She not only promised, but actually made her will, giving Julia one-third of her estate. These acts and declarations indicate quite clearly that the testatrix at that time intended to compensate Julia for her services out of the property which she should leave at her decease, and they may have induced her to remain with, and serve her mother, expecting the compensation promised.

An examination of the cases to which we have referred, shows that the courts make a distinction between cases where the child has become of age, been away from home, established a business, and supported himself, and then returns upon the request of the parent, and one where the child has continued to live with the parent after arriving at age, and has never had any other home.

It appears to us that the evidence raises a question for the jury, and that the trial court erred in directing a nonsuit.

Judgment should be reversed and new trial granted, with costs to abide the event.

All concurred.

Judgment appealed from reversed, and a new trial granted, with costs to abide event.