Belknap,　}
June 6, 1905. }

### PAGE, *Ap't,* v. PAGE, *Adm'r.*

The presumption that services rendered by a child to a parent were intended to be gratuitous arises from the fact that the parties were members of the same immediate household and not from mere propinquity of kindred.

A son who renders valuable services to his mother is entitled to recover therefor on an implied assumpsit when it appears that he was the head of a household wholly distinct from that of the parent.

PROBATE APPEAL, from a decree disallowing the claim of the plaintiff for personal services rendered in caring for his mother, the defendant's intestate. Trial by the court. Transferred from the November term, 1904, of the superior court by *Chamberlin,* J.

After the death of the intestate's husband, in 1876, she continued to reside on the home place, occupying four rooms, where she kept house, attending to her own work and providing her own necessaries of life up to the time of her last sickness in the fall of 1898. The plaintiff and his family during the same time resided in the other part of the house. The mother died in January, 1899. For about three months before her death she was in need of care and assistance, which was furnished by the plaintiff and for which he seeks compensation.

The court found that the plaintiff has maintained a home of his own since 1876, that the mother maintained her home separate from that of the plaintiff, that their ownership of the parts of the house respectively occupied by them was distinct, and that at no time since 1876 did they live together as parent and child. The court ruled that, by reason of an implied promise arising from these facts, the plaintiff is entitled to judgment for the fair value of the services, and the defendant excepted.

*George B. Cox,* for the plaintiff.

*Jewell, Owen & Veazey,* for the defendant.

WALKER, J. If the plaintiff had been a member of his mother's family when he rendered the services for which he seeks compensation, or if, technically, the relation of parent and child had existed between them, it is conceded that he could not recover in the absence of a contract found to exist as a fact. The ordinary legal presumption, arising from the rendition of valuable services with the assent of the defendant, that he promised the plaintiff to pay for them, does not apply when the relationship of

the parties affords evidence that payment was not contemplated, or that the labor was gratuitously performed. If a son while a member of his father's family performs labor which is valuable to the father, he is not entitled to recover therefor in the absence of evidence showing a contract in fact, because the family relationship subsisting between them is evidence that both parties understood that the benefit was gratuitously rendered; and if this evidence is not rebutted or explained by other evidence, it gives rise to a conclusive presumption against a promise of payment. In such a case the plaintiff does not sustain the burden of proof. He does not make out a *prima facie* case, and a nonsuit is properly ordered. The situation of the parties living in a single family as father and son is a very different situation from that existing between strangers who live in distinct families. A presumption of law, based upon the known understanding of men in general in reference to payment for labor performed when they sustain the former relation, is necessarily different from that which arises by a similar process of reasoning when they sustain the latter relation; in the one case payment, in the other non-payment, accords with the known custom or practice of men in general in similar situations; and this presumption is applied by the courts upon an appropriate state of facts, as a matter of law. *Hertzog* v. *Hertzog*, 29 Pa. St. 465, 469. The court in effect declares that the jury shall not be permitted to find the fact of a contract from evidence which is universally deemed to show that no contractual relation was intended.

In *Disbrow* v. *Durand*, 54 N. J. Law 343, 345, it is said: " The reason of this exception to the ordinary rule is, that the household family relationship is presumed to abound in reciprocal acts of kindness and good-will, which tend to the mutual comfort and convenience of the members of the family and are gratuitously performed; and where that ,relationship appears, the ordinary implication of a promise to pay for services does not arise, because the presumption which supports such implication is nullified by the presumption that between members of a household services are gratuitously rendered. The proof of the services, and as well of the family relation, leaves the case in equipoise, from which the plaintiff must remove it or fail. The great majority of cases in which this exception . . . has been given effect have been between children and their parents, or the representatives of the parents' estate, and that fact appears to have led courts of some of our sister states to speak of it as restricted to cases where such relationship in blood existed; but it is not perceived how, within the reason for the exception, it is to be limited by mere propinquity of kindred. It rests upon the idea of the mutual

dependence of those who are members of one immediate family; and such a family may exist though composed of remote relations, and even of persons between whom there is no tie of blood."

" Under certain circumstances, when one man labors for another a presumption of fact will arise that the person for whom he labors is to pay him the value of his services. It is a conclusion to which the mind readily comes from a knowledge of the circumstances of the particular case and the ordinary dealings between man and man. But when the services are rendered between members of the same family, no such presumption will arise. We find other motives than the desire of gain which may prompt the exchange of mutual benefits between them, and hence no right of action will accrue to either party, although the services or benefits received may be very valuable." *Williams* v. *Hutchinson*, 3 N. Y. 312, 317, 318; *Livingston* v. *Hammond*, 162 Mass. 375, 377.

" Generally, where one man performs services for another at his request, or with his knowledge and without objection, the law implies a contract on the part of the person receiving the benefit of the service, to pay a reasonable compensation for it; . . . but this rule does not apply where it appears that the service was intended and understood to be gratuitous, or without expectation of payment. . . . Among the cases of the last description is the case of children of any age, residing with and making part of the family of their father. In such cases the presumption of law is that the services rendered on the one side, and the board and supplies furnished on the other, are gratuitous, and that payment for them is neither expected nor promised." *Hall* v. *Hall*, 44 N. H. 293, 296.

The principal contention on the part of the defendant is, that the presumption that the plaintiff's services were gratuitously rendered arises as a matter of law from the blood relationship of parent and child, although they were not members of the same household. So far as appears from the case, the two families were as distinct, the one from the other, as those of strangers. The fact that the same roof sheltered them does not seem to be important; certainly it is not decisive upon the question whether the family relation existed between the parties. If the plaintiff had been a stranger, it would not probably be claimed that he and the defendant's intestate were members of the same family. The question, therefore, is whether when a son, who is the head of a family wholly distinct from his parent's family, renders services to his parent, there is a legal presumption that they were regarded by the parties as gratuitous favors. If the doctrine is not based upon the consanguinity of the parties, but upon the community of

interest usually found to exist between members of the same family, the question must be answered in the negative.   While it does not appear that the case of a child claiming compensation for services against his parent, when not a member of the parent's family, has been presented for determination in this state, the decisions on the general proposition seem to be based on the idea of the mutuality of the benefits rendered and received by the members of a single family.

In *Munger v. Munger*, 33 N. H. 581, it is to be inferred that the plaintiff was a member of the defendant's family.   The court say: "The fact that a child continues to live with a parent after becoming of age, or returns to live with him after being for a time absent, and becomes one of the family, does not ordinarily constitute the relation of debtor or creditor between them, so as to warrant a charge on the part of the parent for the board of the child, or on the part of the child for such services as are usually performed in a family by a child living with its parent."

*Seavey v. Seavey*, 37 N. H. 125, follows *Munger v. Munger*, and the court states the rule to be, "that where a child continues to form a part of the same family with the father and mother, or one of them, each contributing their services in carrying on the farm or other business and in supporting the family establishment, the relation of parent and child alone would be presumed to exist between them, and no contract would be presumed by which one should become indebted to another, unless some proof of an express contract is offered, or such circumstances, connected with their dealings together, are shown, as fairly to warrant the inference that it was the understanding and expectation of the parties, on both sides, that such services were to be paid for by another party."

In *Bundy v. Hyde*, 50 N. H. 116, 123, it is said: "The cases are very numerous in this state and elsewhere, to the point that the relation of debtor and creditor, or master and servant, is not implied where a son or daughter continues after majority to reside and perform services in the father's family."   The court also hold the rule "is not affected by any considerations of propinquity of kindred."   In that case the plaintiff was a sister of the intestate's wife.   Among the cases referred to is *Wilcox v. Wilcox*, 48 Barb. 329, where it is said: "The law will not imply a promise to pay for board or services, as among members of the same family and persons more or less intimately or remotely related, where they are living together as one household and nothing else appears."   See, also, *Hall v. Hall*, *supra*; *Heywood v. Brooks*, 47 N. H. 231; *Clark v. Sanborn*, 68 N. H. 411.

In Rodgers on Domestic Relations (*s.* 481) the law is stated

thus: "Where a child, after leaving the family of his parents, acquires a home and family of his own, afterward returning to the parental roof upon the father becoming sick and unable to keep up his domestic work and business, and where these are attended to by the son through a series of months, until the death of the father, which services necessitate the giving up of the business of the son, the law will presume that there was an intention between the parties to pay and receive pay for such services." This proposition of law is supported by numerous authorities, in which the household relationship appears to be the test upon which the presumption is made to rest. See, among other cases, *Sprague* v. *Waldo*, 38 Vt. 139, 141; *Kirchgassner* v *Rodick*, 170 Mass. 543, 546; *Markey* v. *Brewster*, 10 Hun 16; *Wilsey* v. *Franklin*, 57 Hun 382; *Marion* v. *Farnan*, 68 Hun 383, 387; *Medsker* v. *Richardson*, 72 Ind. 323; *Collar* v. *Patterson*, 137 Ill. 403; *Wells* v. *Perkins*, 43 Wis. 160; *Marietta* v. *Marietta*, 90 Ia. 201, 204; *Ryan* v. *Lynch*, 9 Mo. App. 18; Harriman Cont., s. 47.

In the case at bar it is expressly found, that the plaintiff and his mother at the time the services were rendered, and for a long time previous thereto, did not live together in the same family as parent and child; and the further finding of an implied promise on the part of the mother to pay for the plaintiff's services is not inconsistent with the evidentiary facts presented. As the reason for the legal presumption that they were gratuitously rendered does not exist, the implication of law that the parties contemplated compensation therefor, in the absence of affirmative evidence to the contrary, warrants the finding of an implied promise. What association of people or relatives together might be held to constitute the family relation within the reason of the rule, it is not necessary to inquire, since no relation of that character existed in this case. Nor is it necessary to decide what evidence would be sufficient in similar cases to warrant a finding of fact that the services were voluntarily rendered, without expectation of payment by either party. The presumption of such expectation by the parties does not arise as a matter of law from the facts reported, and it was not found to exist as a matter of fact or inference from the evidence. There was no error in the ruling of the court.

Other exceptions were taken by the defendant at the trial, but no argument has been submitted in their support and they have not been considered.

*Exceptions overruled : judgment on the verdict.*

All concurred.