the train, and pushed it ahead. It thus appears, in substance, that, while the plaintiff was on the track and about to board the engine, the train suddenly started, not by any act of the engineer, but because moving cars ran into the standing train, and pushed it ahead. The developed facts, therefore, as well as the claim and attitude of the plaintiff upon the trial, show substantially the same situation as appears in the companion case, and the rules there stated apply with equal force to this case, and show, if our conclusion in the other case be correct, that the nonsuit in the present one was properly granted.

The judgment appealed from, therefore, should be affirmed, with costs. All concur.

(112 App. Div. 373)

## In re MILLIGAN'S ESTATE.

(Supreme Court, Appellate Division, Second Department. April 20, 1906.)

1. WORK AND LABOR—SERVICES RENDERED BY MEMBER OF FAMILY.

When a member of the family, after he is 21 continues to live with the family, and thereupon and thereafter renders services, the law will not imply a promise to pay for the services.

[Ed. Note.—For cases in point, see vol. 50, Cent. Dig. Work and Labor, §§ 11½, 48, 49.]

2. EXECUTORS AND ADMINISTRATORS—CLAIMS—EVIDENCE—SUFFICIENCY.

Testimony of claimant that he remained on the farm of his father up to the latter's death; that he worked for $15 and his clothing per month; that he made his home there; that the money was for the value of services in addition to the board and clothing furnished by his father—was insufficient to establish the claim against the father's estate.

[Ed. Note.—For cases in point, see vol. 22, Cent. Dig. Executors and Administrators, § 903½.]

3. SAME.

Where claimant's sister, whose interest was presumably adverse to that of the former, testified that claimant did hard and continuous daily work, taking her mother's place in their deceased father's house, and further testified to a conversation between claimant's husband and decedent, establishing an agreement by decedent to pay claimant on condition that she remain at home and take up the duties of a working housekeeper, claimant's husband giving evidence of a specific agreement by decedent to pay claimant a stated sum for the services, was sufficient, together with claimant's testimony as to the agreement, to establish the claim against decedent's estate.

[Ed. Note.—For cases in point, see vol. 22, Cent. Dig. Executors and Administrators, § 903½.]

4. SAME—STATUTE OF LIMITATIONS—DUTIES OF EXECUTOR.

It is the duty of an executor to raise the question of the statute of limitations as to an alleged claim against the estate.

[Ed. Note.—For cases in point, see vol. 22, Cent. Dig. Executors and Administrators, § 753.]

5. PAYMENT—APPLICATION.

Where neither the debtor nor creditor has made application of a payment on a general account, the court may do so in an action to recover a balance claimed due.

[Ed. Note.—For cases in point, see vol. 39, Cent. Dig. Payment, §§ 115, 116.]

6. EXECUTORS AND ADMINISTRATORS—CLAIMS—PAYMENT—APPLICATION.

Where payment of a claim by an administrator was objected to on the ground that the same was fraudulent and excessive, and it appeared

that one of the items of the claim was outlawed, but the administrator's voucher showed that the claim for balance due and for rent largely exceeded the payment for which claimant receipted in full, such payment might be applied to the balance or to the rent, on proof that the same were justly due.

7. SAME—OBJECTIONS—IMPEACHING PAYMENTS—BURDEN OF PROOF.

Where payments by an administrator are objected to, the burden of impeaching them is on the contestant.

[Ed. Note.—For cases in point, see vol. 22, Cent. Dig. Executors and Administrators, § 901.]

8. SAME—SUFFICIENCY OF EVIDENCE.

Where, on the settlement of decedent's estate, the payment of a professional bill of a physician was objected to, on the ground that the services were rendered to intestate's son, who was not a minor, but it was shown that the physician was the family doctor, and that the services were rendered to intestate's son while a member of the household, and there was no proof that such son was not a minor, the objection was not sustained.

Appeal from Surrogate's Court, Orange County.

In the matter of the judicial settlement of the estate of John Milligan, deceased. Appeal from a decree of the Surrogate's Court allowing certain claims. Reversed.

Argued before WOODWARD, JENKS, HOOKER, GAYNOR, and RICH, JJ.

Charles C. Elston, for appellant.

William P. Gregg, for respondents.

JENKS, J. The administrators are charged with $1,690.71, and are credited with $1,071.79, of which the expenses of administration are $329.16 and debts of the deceased are $610. The balance for distribution is $618.92. Of this sum Agnes M. Welsing is to retain $311.78 in part payment of her claim of $1,096, and Frank Milligan is to retain $307.14 in part payment of his claim of $1,080. Mrs. Welsing and Mr. Milligan are daughter and son of the intestate, respectively, and his administrators. They received their letters on April 23, 1904. On January 2, 1905, Mr. Milligan filed a claim against the estate, dated November 12, 1904, "To services rendered as farm worker and manager at $15 per mo. for 6 years, $1,080." On January 2, 1905, Mrs. Welsing filed a claim against the estate, dated May 18, 1904, for services from April 1, 1898, to November 12, 1900, 31½ months, at $12 per month, $378; to services as housekeeper February 8, 1901, to April 1, 1903, at $15, $386; to services as housekeeper per agreement with Louis C. Welsing, April 1, 1903, to April 1, 1904, at $1 per day, $365—in all $1,129, with credits of $33. These claims were stated in the account. Another daughter of the intestate contested the account, and trial was had before the surrogate. At the first hearing the contestant appeared in person without attorney, and other children of the intestate appeared likewise. At that hearing Mr. Milligan, the claimant, testified that his father was a farmer; that he resided with his father up to the time of death, and worked on the farm. When a member of a family, after he is 21, continues to live with the family, and thereupon and thereafter renders services, the law will not "imply

a promise to pay on either side." Williams v. Hutchinson, 3 N. Y. 312, 53 Am. Dec. 301; Reid v. Farrar, 6 N. Y. St. Rep. 199; Marion v. Farnan, 68 Hun, 383, 387, 22 N. Y. Supp. 946; Wilsey v. Franklin (Sup.) 10 N. Y. Supp. 833. So far as any express contract or understanding is concerned, the claim rests upon the oral testimony of the claimant alone, and even that testimony is vague and indefinite. He testifies:

"I worked for fifteen dollars and my clothing per month. I made my home there. The fifteen dollars was for the value of services in addition to the board and clothing, which was furnished by my father. I worked for fifteen dollars a month and my board and clothing."

This is all of the evidence that bears upon the question of contract. I think that this claim is not established by the "very satisfactory testimony" required by the rule in such cases. Matter of Marcellus, 165 N. Y. 70, 76, 58 N. E. 796; Walbaum v. Heaney, 104 App. Div. 412, 414, 93 N. Y. Supp. 640; Van Slooten v. Wheeler, 140 N. Y. 624, 35 N. E. 583.

I think that upon the evidence the first and second items of Mrs. Welsing's claim cannot be allowed, for the reasons heretofore stated.

I am not prepared to hold that the evidence is insufficient to support the third item. The evidence of the sister Eleanor Milligan, whose interest is presumably adverse to that of the claimant, is that the latter did hard and continuous daily work, taking her mother's place in her father's house after she married Mr. Welsing. Eleanor Milligan testifies to a conversation between Mr. Welsing, her husband, and her father which establishes an agreement by the father to pay his daughter on condition that she would remain at home, and take up the duties of a working housekeeper; and Mr. Welsing gives evidence of a specific agreement to pay his wife a stated sum for the services. That such an agreement should be made is entirely natural; that the services were performed is beyond question. The claim was not stale, and the claimant was permitted to testify that she demanded wages, and to state a plausible reason why they were not paid to her by her father.

The administrators were allowed a payment to Mr. Vaninwegen. His claim is objected to as "fraudulent, excessive, and trumped up." The voucher in the record is for a balance of $202; note due February 27, 1895, $376; interest $208; rent from April 1, 1899, to April 1, 1904, at $200 a year, $950; and certain items that, after credits, make the amount of $1,149.15. It appears that the claimant receipted in full for $360.

The point is made that it appears that the note is outlawed. It is certainly the duty of an executor to raise the question of the statute of limitations. Matter of Goss, 98 App. Div. 489, 90 N. Y. Supp. 769; Butler v. Johnson, 111 N. Y. 204, 18 N. E. 643. But the voucher shows that the claim for "balance" and for rent largely exceeds the payment. When neither the debtor nor the creditor has made application, the court may do so, and certainly the payment of $360 may be applied to the "balance" if that was shown to be justly due, or to the rent under like conditions. Livermore v. Rand, 26 N. H. 85. The objection may be regarded as challenging the payment, and there

should be more clear and explicit testimony as to that fact; the burden of impeaching them, of course, remaining with the contestant. Boughton v. Flint, 74 N. Y., at page 484.

The payment of a professional bill of a physician was met by the objection that the services were rendered to the son of the intestate, who was not a minor. The physician was the family doctor, the services were shown as rendered to the intestate's son, who was a member of his household, and there is, moreover, no proof that he was not a minor. The objection to the payment to Mr. Welsing for services was not sustained.

The decree in so far as it allows the claims of Mr. Milligan, Mrs. Welsing, the payment to Mr. Vaninwegen, and commissions, must be reversed, and a new hearing be ordered upon these matters before the surrogate. All concur.

————

(112 App. Div. 495)

### In re SCHREIBER'S WILL.

(Supreme Court, Appellate Division, First Department.   April 20, 1906.)

WILLS—PROBATE—EVIDENCE.

Under Code Civ. Proc. § 2623, providing that, if it appears to the surrogate that a testator was competent to make a will and not under restraint, it must be admitted to probate, there must be positive evidence that the testator was competent and not under restraint.

[Ed. Note.—For cases in point, see vol. 49, Cent. Dig. Wills, §§ 138, 421, 697, 698.]

Ingraham, J., dissenting.

Appeal from Surrogate's Court, New York County.

In the matter of the last will and testament of Jane Schreiber, deceased. From a decree admitting the will to probate, an appeal is taken. Reversed.

Argued before O'BRIEN, P. J., and McLAUGHLIN, INGRAHAM, CLARKE, and HOUGHTON, JJ.

Charles O. Maas, for appellant.

James Ridgway, for respondent.

