In the Matter of the Judicial Settlement of the Account of KATHERINE W. SPAULDING, as Administratrix, etc., of LUCY A. WEED, Deceased, Respondent.

FRED SPAULDING, Appellant; WARREN T. WEED, Respondent.

*Executors and administrators — accounting — claim of son-in-law — evidence.*

Appeal from a decree of the surrogate of Saratoga county disallowing a claim of Fred Spaulding against the estate of Lucy A. Weed, deceased.

Decree affirmed, without costs. All concur, except Kiley, J., dissenting with an opinion.

KILEY, J. (dissenting): Fred Spaulding and Katherine W. Spaulding referred to in the record in this proceeding are husband and wife. The decedent, Lucy A. Weed, was the mother of Katherine W. Spaulding aforesaid, and it follows that Fred Spaulding was the son-in-law of said decedent. I glean from this record that in the month of April, 1917, the husband of Lucy A. Weed died on a farm which she owned in the vicinity of Saratoga Springs; that she and her husband, previous to his death, lived alone on that farm except at such times as they were ill when Mrs. Spaulding went there to care for them, or brought them to the home of the claimant, to care for them until they recovered. Mr. Weed was the father of Mrs. Spaulding. At the death of Mr. Weed in 1917, as aforesaid, there was no one at the homestead farm to care for his widow, the decedent, Lucy A. Weed. She was then eighty-three years of age. She had besides Mrs. Spaulding, one son, Warren T. Weed, the contestant in these proceedings. Let it be observed here that the record is devoid of evidence of anything he ever did for his mother. Mrs. Weed was, on the 28th day of April, 1917, brought by claimant to his home, and there remained until she died at the age of eighty-six, having been there and supported by this son-in-law 1,125 days. Upon the death of Mrs. Weed the daughter, Mrs. Spaulding, was appointed her administratrix. She allowed, but did not pay a bill of her husband of one dollar a day against the estate of her intestate. Mrs. Weed had a small estate in personal property, and the farm which was sold by the heirs for $1,800. The personal property and the proceeds of the real estate passed to the administratrix, and she filed her account for a final judicial settlement. The brother of Mrs. Spaulding, Warren T. Weed, filed objections, in effect as follows: That it is not a proper charge against the estate of said decedent; that it was not a contractual obligation of the decedent; that

it was a claim of the administratrix personally. The surrogate disallowed the claim and an appeal by the claimant presents but one question for consideration: Is the claimant precluded from recovering because he is a son-in-law of decedent? To start with, counsel for the contestant, at the close of the examination on his part, said: " We rest and raise no question as to the value of the services." The decision of the learned surrogate is based upon the presumption that no claim for services can be made by one member of a family against the estate of another member of the same family unless there is an express contract or the circumstances are such as to point irresistibly to an implied contract; he found that there was no express contract and that the evidence did not warrant a finding of an implied contract. I think he overlooked an important item of the evidence which is always the basis of an express contract. Mrs. Spaulding, on examination by her counsel, testified as follows: " Q. Your husband brought her there? A. Yes, came there with us. Q. Did she ask that she might come there? [Objected to under sec. 829]* A. Yes." Previous to the foregoing examination Mrs. Spaulding was asked by her counsel: " Q. Was there ever anything said by your mother either directly, to you or to your husband, that he would be paid for taking care of her? [Objected to as incompetent. Objection sustained. Exception.]" This was a competent question, and if the counsel had not waived it, as he expressly did, would have constituted reversible error. In addition to the request of Mrs. Weed that she be taken to the home of claimant, and that he brought her pursuant to that request, there is evidence of different witnesses that she expressed a desire to pay. This bill simply covers what, in fact, is due the claimant personally. It cannot be spelled out here that the daughter, his wife, was asking for or getting anything for the multitude of items of service necessary to make comfortable a woman from eighty-three to eighty-six years of age. Mr. Justice Martin in *Davis* v. *Gallagher* (55 Hun, 593) says: " We do not think it was necessary to entitle the plaintiff to recover that he should prove an express and definite contract; but that, in the absence of such an agreement, it was incumbent upon him to prove such facts and circumstances as would show an understanding or expectation on the part of the decedent to pay, and of the plaintiff to receive, the value of such services and property." In *Matter of Grogan* (82 Misc. Rep. 555) the surrogate in a very able opinion points out that the rule applied here is the one laid down in *Williams* v. *Hutchinson* (3 N. Y. 312) and continued to be applied until the decision in *Moore* v. *Moore* (3 Abb. Ct. App. Dec. 303) where it is said in part: " Ordinarily, from the fact of the rendition and acceptance of services beneficent in their nature, the law will imply a promise to pay what the services are reasonably worth. *This implication may not be repelled wholly by the fact that the service is rendered to a parent by a son of full age.*" I do not go the full length with the learned surrogate in his opinion in the last cited case; but it states a rule now followed and applicable to this case so far as quoted. (See, also, *Marion* v. *Farnan*, 68 Hun, 383; *Wilsey* v. *Franklin*, 57 id. 382.) Opposed, in principle, to the rule adopted in the foregoing cases are the following: *Matter of Dole* (168 App. Div. 253); *Kearney* v. *McKeon* (85 N. Y. 136); *Matter of Van Slooten* v. *Wheeler* (140 id. 624); *Porter* v. *Rhoades* (48 App. Div. 635); *Forbes* v. *Chichester* (30 N. Y. St. Repr. 370). These cases are cited in *Matter of Doubleday*

* Code Civ. Proc. § 829. Now Civ. Prac. Act, § 347.— [REP.

(173 App. Div. 739); *Matter of Babcock* (169 N. Y. Supp. 800; affd., 185 App. Div. 906). That we are getting away from the strict rule held in these cases is apparent from the holding in *Matter of Sherman* (227 N. Y. 350). The foregoing cases, upon examination, will be found to differ from the one at bar in important particulars. Here we have the request of Mrs. Weed that she be taken to the home of the claimant. We have her taken to that home pursuant to such request and cared for; that this contestant, her son, who by law * was obliged equally with his sister to take care of her, if she was financially unable to care for herself, standing by and making no objection, in her lifetime, to the arrangement of which he must have had knowledge. An appellate court allowed and commanded to do so, will search every word and line within the covers of a record to see that justice is done. (Code Civ. Proc. § 1317; Civil Practice Act, § 105.) More than that it will search out the motive for the attitude of the parties interested. Again reverting to the question put to Mrs. Spaulding as to what the conversation was as to the contract, and the sustaining of the objection to the same, that question standing out, silent and unanswered, by reason of this contestant's objection, speaks louder, I believe, than the answer would have spoken. The question was competent and the contestant, by his attitude, plainly says that such answer would have been to his disadvantage. I disapprove of the finding of the learned surrogate that the evidence is insufficient to sustain the claim. I favor a reversal of the decree of the surrogate, with costs.

---

* See Code Crim. Proc. § 914 *et seq.*— [REP.