Rockingham,
Feb. 7, 1939. } No. 3041.

ELIZABETH M. BLAKE & a. v. HARRIET C. LORD.

*Wyman, Starr, Booth, Wadleigh & Langdell (Mr. Wyman* orally), for the plaintiffs.

*William H. Sleeper,* for the defendant.

ALLEN, C. J. The action is brought by the plaintiff individually and as executrix of her deceased husband's will. In her personal capacity she is called the plaintiff. The defendant roomed and boarded at their home for over fourteen years and up to the time of the husband's death. His mother owned the home during part of the period and no charge for room rent is made for any time before he became the owner. He was a nephew of the defendant. While living with him and his wife she made no payments for the services furnished her unless by her own contributed services and supplies.

The motions for a nonsuit and directed verdict were properly

denied. As to the law, although "in the absence of countervailing considerations . . . the voluntary acceptance of valuable services indicates an intention to pay for them," yet "as between members of the same family the mere rendition and acceptance of valuable services will not justify the inference of a promise to pay." *Decatur* v. *Cooper*, 85 N. H. 250, 253. But facts and circumstances leading to a rational conclusion that the parties understood the services were not to be gratuitous may be shown to establish liability for them. *Page* v. *Page*, 73 N. H. 305; *McConnell* v. *McConnell*, 75 N. H. 385.

As to the evidence, while it is far from probative to the point of convincing conclusiveness, it is deemed sufficient for a reasonable inference of an enforceable agreement for payment. The plaintiff testified that the defendant told her and her husband that they "would be properly reimbursed for all" their "trouble for everything" they "did." That the statement referred to the services for which recovery is sought, is a proper conclusion, although it may not be a necessary one. She also testified that she and her husband both expected payment. And there was evidence of the understanding and expectation of all the parties for remuneration. Without extended review certain supporting facts or evidence may be noted. On many occasions, when "something particularly nice and kind for her" was done, the defendant remarked that the plaintiff and her husband would be "well repaid." She had substantial means, and the plaintiff and her husband understood that they were ample to pay for the services. She was a widow with no children or dependants. She made a will which contained provision for the plaintiff's husband, destroying it after his death. She owned a place which had been her home until she went to live at the plaintiffs' home and of which she thenceforth made only transient occupancy. Her sister owned and lived in the plaintiffs' home when she went there, and she did not leave it after her sister died until the death of the plaintiff's husband more than five years later.

The defendant argues that "no contract to will personal property having been shown, there could be no action in assumpsit based upon mere unsatisfied expectation of testamentary benefit." The answer is that the expectation of benefit was not limited to such means and method of payment. It was not the thought that there would be payment provided it were arranged by will, but payment was expected although no bequest for it was made. The understanding was that a debt was incurred, dischargeable by payment, whether or not a will acknowledged the debt and provided for its discharge.

As evidence of the husband's expectation of payment, the court admitted his statement to the plaintiff that she would have to present the defendant with a bill for the services if he died before the defendant and the defendant revoked any testamentary provision for payment. The evidence was competent, as the issue related to a state of mind. *Mitchell* v. *Smith, ante* 36. For the same reason the evidence of another statement to the plaintiff by her husband to the effect that the defendant had told him that she had made a will in his favor, was competent. It was offered only on the issue of his expectation, and not to prove the truth of his statement. If its admission was subject to the undue prejudice rule, the trial court's discretionary authority was not improperly exercised as matter of law.

Exception was taken to the plaintiff's testimony that she received no compensation independently of the general earnings of the store which her husband kept and in the conduct of which she assisted. It was admitted for its tendency to show her husband's "attitude there." If it was too remote to be received on a proper issue of some attitude of the husband, yet it is not perceived how it could have prejudiced the defendant. The suggestion that it showed the plaintiff to be in need of some of the defendant's money, seems fanciful. Her lack of means, if it had been an issue, could not be inferred from her lack of salary in the store. For all the case shows, she and her husband may have been well to do, and she may have received his estate upon his death.

The exception to evidence of the defendant's promise of reimbursement for all that was done for her is also overruled. As has been said, the promise was capable of reference to the services for which recovery is sought, and whether it had such reference was for the jury's determination.

The exceptions to evidence of the plaintiff's information about the defendant's means and to her understanding that the defendant had sufficient means to pay for the services, have not been argued, and no good reason for sustaining them is suggested. It was also permissible for the plaintiff to testify to her husband's expectation of payment. His state of mind was a fact which might be made known to her by his statements to her. Although she heard what he said, which therefore was hearsay, yet it was a disclosure of his attitude to which she could bear witness. Knowledge may be gained by hearing as well as in other ways. The rule limiting the use of hearsay evidence is inapplicable.

After her husband's death the plaintiff asked the defendant whether the provision of the latter's will for reimbursement was to stand, and on receiving a non-committal answer said she would therefore be obliged to present a bill for the services. The evidence was competent on the issue of her expectation to be paid, if not by a bequest in the defendant's will, then in some other manner.

Soon after her husband died the plaintiff was asked by the defendant if the papers she had given to be kept in the husband's safe were still there. The plaintiff replied affirmatively and said she would carry out everything according to the defendant's expressed wishes. The evidence threw some light on the relations between the parties. If it was too remote to be helpful, neither was it harmful. No merit of logic is contained in the argument that it tended to impress upon the jury the view that the plaintiff was entitled, regardless of a contract, to allowance for the services in lieu of testamentary provision therefor by the defendant.

A number of exceptions relate to evidence that the defendant had substantial means. It was competent in its relevant bearing on her own expectation to pay for the services she received. Her ability "to pay a verdict" was a circumstance helping to show her attitude of expecting to pay. It also tended to support the understanding of the plaintiff and her husband that she had means, taking it in connection with the evidence of their information. The evidence of their information was strengthened by proof of its correctness, and proof that she had means added to the weight of the evidence of their understanding to such effect.

Other exceptions relate to evidence of wills the defendant made. The evidence bore relevantly on her understanding whether the services were gratuitous or imposed an obligation on her to pay for them. While her provision for the plaintiff's husband was on the condition that he survive her and thus had some tendency to indicate that she had no further sense of obligation, it was nevertheless also indicative of a recognition of liability which she sought to defeat if the condition were not fulfilled. The jury were entitled to consider the evidence for such value as they thought it had on the issue.

Shortly after the defendant received the bill for services she withdrew money from local banks greatly in excess of the amount of the bill. She testified that her purpose was to enable her to use it and prevent it from being "tied up." The withdrawals had the natural effect to make it difficult for the plaintiff to collect any judgment obtained if she brought suit upon the bill, and the defendant's con-

duct was susceptible of an inference that she feared such an outcome of a suit. If not a direct admission of liability, it was capable of construction as an acknowledgment of weakness or doubt in the merits of her defence, or, otherwise stated, as a recognition of some probable validity in the claim. It thus also was relevant on the issue of her credibility in her testimonial denial of liability. On either ground it was not of such frail force that the court might not consider it within the range of legitimate cross-examination. The prejudice thereby incurred was not necessarily undue.

Exception was taken to a question asked the defendant in her cross-examination as to her intention to disinherit the plaintiff's husband because of what he had done for her. The question was not answered and contained no improper information or suggestion. The exception is overruled.

The defendant filed a set-off for services furnished by her and to an amount in excess of the plaintiffs' claim. It was disallowed, but the court's charge required consideration of the services in determining what allowance they should have in assessing the value of the services furnished to her. This course was proper. The defendant introduced no evidence in support of the set-off. She was bound by her testimony: "I never thought of pay either way, for them to pay me or I them." The issue was therefore, not what the plaintiffs owed her, but what their services were worth, taking into account what she did to earn her way.

Of the exceptions to argument, four are to statements which it is claimed the evidence does not support. The record shows that the statements were warranted either as reasonable inferences from the evidence or as direct assertions of it. Two exceptions are now sought to be supported on grounds other than those of the objections made to the argument at the trial. They are therefore unconsidered.

It was argued that although the parties had been friendly, yet after the death of the plaintiff's husband the defendant changed her will in favor of a relative and in spite of the closeness of her past membership in the plaintiff's family. In her direct examination a witness for the defendant testified that she had been told that any money the defendant left would go to the relative. The rule against hearsay evidence in respect to the testimony was not invoked in objection. The argument was thus supported by the evidence, and was legitimate to sustain the plaintiffs' position that the discharge of the defendant's obligation was no longer provided for by testamentary arrangement.

It was said in argument that the defendant had made wills which were not produced in evidence. The statement was qualified to exclude any destroyed wills. The plaintiffs had introduced evidence relating to the wills, and it was proper to comment on the defendant's failure to produce them or give evidence of their contents as an admission that the plaintiffs' evidence upon the subject was true.

In argument plaintiffs' counsel said: " . . . if Mrs. Blake [the plaintiff] could have known that there was a will, a change in the will in 1936 . . . the probabilities are that Mr. Blake [her deceased husband] knew of the change in the will." The anachronism that one might know while living of a change in a will made after his death destroys any validity to the argument in its literal phraseology. But the context makes it clear that the change referred to, in naming the plaintiff's husband the defendant's executor, was made upon the death of her sister. Whether or not the husband knew about it, may be assumed to be conjectural. But if the statement was unsupported by the evidence, no inference adverse to the defendant could be drawn from it. No reasons have been specified in assertion of its prejudicial effect, and it is regarded as harmless.

Counsel in argument attacked the testimony of a witness and said the defendant had reiterated it. On objection that she had not confirmed part of the testimony, the argument, as the record is construed, was qualified to limit any significance it had to a part of the testimony to which the objection of reiteration by the defendant was not applicable. The claim of reiteration thus being in effect withdrawn so far as the objection went, it left the argument as though the claim had not been made.

In argument counsel discussed the defendant's dividend checks, which, whether separately large or small, were said to total a specified amount. The statement was harmless, even if it was not a fair inference from the evidence There was evidence that money including the checks or their proceeds and in the amount claimed was deposited in her savings bank accounts, and it was shown how much these accounts were, in proof of the claim that she had substantial means. The plaintiffs conceded that the dividends eventually formed a part of the savings bank deposits, which were enough to show substantial means, and the evidence of the dividends was merely cumulative upon the issue of means. That issue was not of their full amount but only that they were substantial in adequacy to pay for the services the defendant received.

The defendant excepted to the charge in its statement of the bear-

ing of any promise to pay through provisions of a will. The plaintiffs' position is that while such a promise was made, it was not a contractual one in respect to such a method of payment. It was in evidence to aid in showing that all parties understood that the services were not a gift. No claim for damages for not providing for payment by will is made. Claim is made that while payment was thus promised, the promise did not exclude payment in other ways. The claim is of an unconditional promise to pay, which might or might not be performed by a bequest of payment, but the evidence of which was reënforced by the promise of the bequest.

The charge is considered to express the rule of liability with sufficient clarity to be intelligible to the jury. The basic issue was whether the services were compensable or gratuitous. The jury were instructed that the evidence relating to a promise of testamentary provision for payment was to be employed in passing upon that issue. The criticism of a selected part of the court's discussion of the issue loses its validity when regard is paid to the entire discussion.

The evidence, though in large measure circumstantial, is thought sufficient to warrant a finding of a promise to pay in the manner claimed. The testimony that the defendant told the plaintiffs they would be "properly reimbursed" for all their "trouble for everything" they did, might be found to be such a promise in the light of all the circumstances which formed the situation in which her statement was made.

The defendant made other requests, denied subject to exception, not shown by the record, but briefed and by omission of objection held assented to by the plaintiffs. No grounds for the assertion of error in respect to a number of them are presented or appear. Some called for instructions which if granted would merely have amplified and expanded the charge in a manner not considered demanded. Some are disposed of by the rulings upon other exceptions with which they are affiliated.

One request was for a ruling that the plaintiff personally could not recover. The action is upon a claim of liability to the plaintiffs jointly. The evidence is abounding that the plaintiff and her husband coöperated and acted together as a married couple in furnishing the services. If she did not own the home, she took part in running it. If she did not buy and pay for the food, it was prepared and served under her general household management. Her expectation of payment might be fulfilled by payment to her husband, but her gratuitous service for the defendant did not thereby follow. The

50

whole tenor of the evidence points to no liability of the defendant which was separate or divisible as between the plaintiff and her husband. The liability being found, it ran to them as joint, and not several creditors.

*Judgment on the verdict.*

All concurred.