[Civ. No. 2551. First Appellate District, Division One.—December 27, 1918.]

## BOZO M. GOPCEVIC, Appellant, v. MILOS M. GOPCEVIC, Respondent.

CONTRACTS — ORAL CONTRACT FOR PERSONAL SERVICES — ACTION FOR BREACH—BLOOD RELATIONSHIP BETWEEN PARTIES.—In an action for breach of an alleged oral contract by the defendant to support the plaintiff for life, in consideration of the rendering of certain personal services, where there is a blood relationship between the parties, it may well be inferred, in the absence of a direct understanding to the contrary, that pecuniary compensation was not expected by the one performing the services.

ID.—EXISTENCE OF CONTRACT—EVIDENCE.—In this action, in which the plaintiff and defendant were brothers, there is no evidence of such a direct understanding between the parties as to the performance of services and compensation therefor as conclusively shows any contract between them.

ID.—CONFLICT OF EVIDENCE — NONEXISTENCE OF CONTRACT — FINDING SUSTAINED.—There being a substantial conflict in the evidence, the finding of the trial court that there was no such contract must be sustained.

FINDINGS—IMMATERIAL ISSUE.—A judgment will not be reversed because of the refusal of the trial court to find upon an immaterial allegation of the complaint.

TRIAL—REOPENING CASE — DENIAL OF MOTION — DISCRETION OF TRIAL COURT.—The reopening of a case to allow further testimony to be submitted is usually a matter of discretion with the trial court.

ID.—REFUSAL TO COMPEL PRODUCTION OF WRITTEN EVIDENCE — SUBSEQUENT PRODUCTION.—Error, if any, in refusing to compel the production of a certain letter was cured by its subsequent introduction in evidence.

ACTION FOR SERVICES—VARIANCE.—Where the plaintiff counted on an express contract for services, an objection to his testifying as to the reasonable value of his services was properly sustained.

ID.—REFUSING LEAVE TO AMEND.—Where, in such case, it appeared that the plaintiff had no contract, the refusal of the court to grant him leave to amend his complaint by adding a count for the reasonable value of his services did not prejudice his case.

APPEAL from a judgment of the Superior Court of Lake County. M. S. Sayre, Judge. Affirmed.

The facts are stated in the opinion of the court.

Walter M. Willett, Geo. H. Cavalier and R. H. Country-man for Appellant.

Charles S. Wheeler, John F. Bowie and Nathan Moran for Respondent.

BEASLY, J., *pro tem.*—This is an action for damages for breach of an alleged contract to support plaintiff for life, which plaintiff claims was made verbally with him by the defendant, his brother. The court found that no contract existed and gave judgment for the defendant, from which he appeals. This exceedingly voluminous record, consisting of over five thousand folios of closely printed transcript, seems to us to present but a single vital question, namely: Whether or not there was a conflict of evidence upon the question of the making of this contract.

The evidence of the alleged contract consisted of two conversations between plaintiff and defendant, one had in the year 1904 and the other in the year 1911. The plaintiff's testimony as to the first of these conversations is as follows:

"Q. Now, then, did you go then to Europe at the request of Judge Davis and your brother Petar?

"A. I did. Before I went to Europe Milos came right after them in the same place, in the dining-room. I was living there. He said, 'You go and try to do what you can, you don't need to work or anything else any more, you will be provided for all right. You will live with me as long as you live, everything what is mine is yours.' "

In a second version of this conversation, the plaintiff testified as follows:

" . . . they come before I went to Europe and he told me that, 'Now,' he said, 'you go to Europe and do what I ask from you.' And Pete and Judge Davis was there before. After that he said, 'After everything will be settled and you will live here and you will be provided for and everyone of the family.' That was the conversation with me before I left for Europe the second time."

Plaintiff's counsel in their brief assert that "the defendant did not deny that this conversation took place," but the defendant testified as follows:

"Q. You heard the testimony, did you, given by the plaintiff, when he testified that you came to him in the house on

Sacramento Street and you said 'Go and do what you can, you don't have to work, everything that is mine is yours,' you heard that testimony, did you?

"A. Yes.

"Q. Will you state whether or not you ever had such a conversation with the plaintiff?

"A. Never.

"Q. Did you ever have any conversation with him getting any information about the family in Europe?

"A. No, never."

John F. Davis, mentioned by plaintiff in his first version of this conversation, testified:

"I never had any interview with plaintiff in which I asked him to get testimony or evidence at any time."

The following facts will shed light upon the breadth of meaning of this denial of Mr. Davis. It seems that the defendant was engaged at the time of the conversation in 1904, above quoted, in a legal controversy of a somewhat sensational character over the estate of his deceased wife, and that Judge Davis was his attorney. The plaintiff claimed that a part, at least, of the services which he was to perform, in return for his support for the remainder of his life, was to proceed to Dalmatia, of which country the brothers were natives—and there procure evidence as to the lineage of his family for use in controverting certain allegations as to misrepresentations which the opponents of the defendant in the litigation above named asserted the defendant had made to his wife. The defendant did proceed to Europe at that time and did attempt, at least, to procure this testimony. The denial by Judge Davis that he asked the plaintiff to get such testimony, or that he had any interview with him on this subject, was practically a complete denial of the conversation so far as it referred to him. Further, Judge Davis testified that the best of his recollection was that he had not met plaintiff until a later date. It will thus be seen that the defendant positively denied the conversation and the agreement as testified to by the plaintiff, and that he was corroborated in this assertion in an important particular by Judge Davis.

Petar Gopcevic, mentioned in the testimony of plaintiff, died before this action was tried.

The evidence of the second alleged contract is the conversation which plaintiff testified took place in San Francisco

in May, 1911. It is as follows: "A. Milos see me and tried to run across the street. I met him and I said, 'Why you want to run away?' He said, 'No.' I said, 'What you mean, what you promised to me?' 'Oh,' he said, 'I never did.' I said, 'You discharged me'; and he said he didn't, and I said, 'You did,' and I said, 'What you order Mathews to do that?' 'Well,' he said, 'I will give you one hundred dollars.' I say, 'No, I want you to settle 'down with me right now.' 'Well,' he said, 'I will see.' I said, 'One hundred dollars is not enough for me.' "

The defendant contradicted this evidence in the following language: " . . . We met there. Bozo comes up. We stepped in front of the saloon. 'Well,' he said, ' I am without money and ain't got nothing to do.' I say, 'Well, that ain't my fault.' He said, 'I haven't got anything.' I walked in the saloon. I said, 'Who told you to go out of the house?' We went in the saloon, we three went in the saloon and had some talk that don't concern anybody but me Millan, and we took three drinks, and he wanted to talk more to me and I went away."

This latter conversation of 1911 may be disposed of briefly by the statement that, even taking the plaintiff's own testimony at its full value, it constitutes no contract between the parties. For it will be evident, from reading it, that if the offer was made by the defendant at all, it was an offer to give the plaintiff one hundred dollars, and that plaintiff refused to accept this offer. But defendant's reply to this testimony certainly raises a conflict as to whether this conversation was correctly stated by the plaintiff.

Perhaps this matter will be made a little more clear by a brief history of the relations of the parties. The brothers, Milos and Bozo, were working as gripmen on the San Francisco cable cars in 1903. The defendant in that year met and married an American girl who possessed considerable property. From the time of this marriage, the wife seems to have been very generous with her husband, and the husband seems to have been equally generous with the plaintiff, his older brother. For instance, Milos' wife gave him one thousand dollars as a Christmas present. He promptly handed this entire one thousand dollars over to Bozo, so that the latter might take a trip to Europe. From that time until some time after the death of Milos' wife, the defendant seems to have

been generous on all occasions with his brother, who, so far as this evidence is concerned, did nothing in return therefor, except to engage in various errands and small oversights of business, which services might very well have been performed gratuitously by one brother for another in any family, and especially in a family bound together by as close ties as those which unite ordinary South European relatives.

There was in the case certain circumstantial evidence and certain evidence of various third parties—relatives and those not related to the parties—which the plaintiff claims corroborated his assertions as to the contract upon which he sues; but, taken all together, this testimony does no more than raise a conflict when read in connection with the evidence of the defendant and of Judge Davis. Indeed, it may well be doubted whether the plaintiff's evidence, if uncontradicted, would have constituted a contract between these parties, for where there is a blood relationship between the parties, it may well be inferred, in the absence of a direct understanding to the contrary, that pecuniary compensation was not expected by the one performing the services. (*Gjurich* v. *Fieg,* 164 Cal. 432, [Ann. Cas. 1916B, 111, 129 Pac. 464].)

And certainly here there was not, without other circumstances and other evidence, such a direct understanding between the parties as to the performance of services and compensation therefor as conclusively shows any contract between them. (*Murdock* v. *Murdock,* 7 Cal. 511; *Crane* v. *Derrick,* 157 Cal. 667, 672, [109 Pac. 31].)

But, however that may be, it must be held here that there is a substantial conflict in the evidence of the parties, and that, therefore, the trial court's finding on the subject of the existence of this contract must be sustained. This issue, being the vital issue in the case, the remaining points argued by appellant become immaterial, unless errors of law in the exclusion of other evidence which would have established the contract are disclosed by the record. There are no such errors, for the offered evidence, if admitted, would not have made possible any different finding.

Appellant argues that the case should be reversed because of the refusal of the court to find upon an allegation of the complaint as to an alleged Dalmatian custom, which, he claims, was a material issue in the case. The allegation of the complaint, stripped of immaterial matter, is that the oldest

male member is regarded as the head of the family in Dalmatia. We really cannot see how this fact could have affected the issues in this case, even if it were true.

Plaintiff also complains that the court improperly denied his motion to reopen the case. The trial was commenced on February 8, 1915, and after several days' hearing was adjourned and resumed on April 26, 1915. The case was argued and submitted on the twenty-eighth day of April, 1915, and not until six months later, namely, on October 27, 1915 (during which time the court seems to have been waiting for the filing of briefs by the respective parties), did plaintiff give notice of the motion to reopen the case and submit further testimony. This motion was based upon an affidavit of plaintiff, and the further testimony which he desired to offer consisted of testimony taken from the depositions in the litigation over the defendant's wife's estate, and certain evidence found in records of that estate and the testimony of one Bullut which, it is claimed, would have established the date upon which the plaintiff left for Europe, as he claims, for the purpose of procuring testimony for use in the trial of that case. It is not possible that six months could have been necessary to ascertain these facts. Due diligence, had it been exercised, undoubtedly would have disclosed this testimony. The plaintiff claims that these matters were called to his attention a short time before the filing of his affidavit and the noticing of his motion by a newspaper clipping apparently contemporaneous with the contest over the wife's property, and which he says he did not previously know of. But if he had searched the records in Lake County in the court in which this case was tried he could not have failed to ascertain all that these records would have disclosed, and the testimony which he claims defendant gave in the deposition referred to would not in any way have strengthened his case, for it referred to nothing except the ancestors of the Gopcevic family.

But reopening of a case is usually a matter of discretion with the trial court, and in this case it can hardly be doubted that had the trial court reopened the case, it would have abused that discretion.

Appellant complains that a certain letter which he demanded from counsel for the plaintiff was not delivered to him to be introduced in evidence in his case. This letter was produced and was left in the hands of the court or clerk. It

was subsequently introduced in evidence by the defendant. It is not necessary under these circumstances to determine whether or not it should have been delivered to the plaintiff so that he might use it in support of his motion because of its subsequent production in evidence which cured any error, if error there was, in refusing to permit its use by the plaintiff.

The plaintiff complains that he was not permitted to testify as to the reasonable value of his services. He counted upon an express contract, and, speaking technically, the objection was properly sustained. He asked permission to amend his complaint by adding a cause of action for the reasonable value of these services. It appearing that he had no contract, the refusal of the court to grant the request did not prejudice his case.

The judgment is affirmed.

Lennon, P. J., and Sturtevant, J., *pro tem.*, concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 24, 1919.

All the Justices concurred.