[S. F. No. 4871. In Bank.—May 9, 1910.]

W. W. CRANE, as special Administrator of Estate of Anna J. Gilson, Deceased, Respondent, v. GEORGE H. DERRICK, Appellant.

ACCOUNTING OF GUARDIANSHIP OF MOTHER BY SON—COUNTERCLAIM BY SON FOR BOARD AND LODGING OF MOTHER—DISALLOWANCE BY TRIAL COURT—AFFIRMANCE ON APPEAL.—In an action by a mother for an accounting of guardianship of her estate by her son, the value of which was determined, in which the son set up a counterclaim for board and lodging of the mother which the trial court disallowed, where the only question upon appeal from the judgment relates to the disallowance of such counterclaim, and the record upon appeal shows no agreement or understanding that such board and lodging was to be paid for, the only question is whether such promise could be implied; and where the circumstances are such as to warrant the trial court in inferring as a fact that no promise was implied, the judgment must be affirmed.

ID.—GENERAL RULE AS TO IMPLIED CONTRACT—REBUTTABLE PRESUMPTION—REBUTTAL BY PARTICULAR CIRCUMSTANCES.—Ordinarily and as a general rule, where there is no express contract to pay for services or for board and lodging, the law will imply a promise to

pay for them. But this rule is based only on a rebuttable presumption; and the implied promise may be overcome by proof of particular circumstances warranting the inference that it did not exist, and that the services were intended to be gratuitous.

ID.—DEGREE OF RELATIONSHIP BETWEEN PARTIES TO BE CONSIDERED.— In the consideration of such particular circumstances, the degree of the relationship between the parties may serve to strengthen or diminish the implication that the services are acts of gratuitous kindness and affection according to its proximity or remoteness.

ID.—INFERENCE FROM RELATIONS BETWEEN MOTHER AND SON.—One of the most familiar classes of cases in which the presumption of an implied contract is rebutted, is where the claim is asserted between parent and child. Where the son told his aged mother on several occasions that she was welcome to a home with him and he wrote similar statements to his brother and sister, and the mother was treated in every respect as an invalid mother would be treated by a son who was abundantly able to give her a home and who never intimated that she was expected to pay him anything for board and lodging, the natural inference that the trial court was warranted in making is that neither party contemplated any pecuniary compensation therefor.

ID.—COMPENSATION MUST BE EXPECTED BY BOTH PARTIES DURING RELATIONSHIP.—To authorize compensation in such a case, the circumstances must be such as to warrant the inference that it was the expectation of both parties that compensation should be made, and it is only the expectation of both parties existing while the relation continues, that is to control. No circumstance occurring afterwards can convert that into an implied contract that was not so before.

APPEAL from a judgment of the Superior Court of Alameda County. John Ellsworth, Judge.

The facts are stated in the opinion of the court.

G. W. Langan, and Asa V. Mendenhall, for Appellant.

Frank L. Rawson and James P. Montgomery, for Respondent.

ANGELLOTTI, J.—This action was brought by Anna J. Gilson against the defendant for an accounting as to property owned by her and in his possession and to recover the sum found due on such accounting. An accounting was had, resulting in a judgment in favor of plaintiff for $3195.76. This is an appeal from said judgment. During the pendency of the appeal Mrs. Gilson died and her special administrator has been substituted as plaintiff.

It is stipulated that the only question to be determined on this appeal is as to the correctness of the action of the trial court in disallowing certain claims made by defendant against Mrs. Gilson, aggregating $986.62, for board, lodging, and care of plaintiff at certain specified times between May 1, 1903, and May 1, 1906, at the rate of $40 per month, the same being: 1. From May 1, 1903, to October 3, 1903, $162.66; 2. From January 8, 1904, to May 15, 1904, $169.30; and 3. From December 20, 1904, to May 1, 1906, $654.66.

There is no dispute as to the claim being correct in amount, nor as to the fact that the board, lodging, and care were furnished to Mrs. Gilson. There was no express contract as to such board, lodging, or care, and Mrs. Gilson could be held liable therefore, if at all, only upon an implied contract. Ordinarily, of course, the law will imply a promise on the part of the recipient of services to pay for them. Plaintiff's claim is that no such promise is implied in this case in view of the circumstances under which the services were performed.

Mrs. Gilson was the mother of defendant. In May, 1902, she was about seventy years of age. She was then residing in Reno, Nevada, and had been residing there for about twenty years. She owned property aggregating in value about ten thousand dollars, a portion thereof being real property in Reno. Defendant was engaged in the practice of medicine in Oakland, California, where he had a large and lucrative practice. Defendant's wife was also a licensed physician. They were apparently living in very comfortable circumstances. His mother becoming very ill, and apparently incompetent to care for herself and her property, he went to Reno, and, having been appointed guardian of her person and estate, brought her to his home in Oakland, where she remained until October 3, 1903. She did not remember at all about being taken to Oakland, but found herself there when she "came to, so as to know" where she was. During this period of her stay at defendant's house she was very feeble, and defendant and his wife furnished everything necessary for her maintenance, "care, room, board, such medical advice as was necessary, special massage at times by an assistant in the office, and at times with a horse and buggy—anything that we could do to make her comfortable and happy." In short, she was treated in every respect as an invalid mother

would ordinarily be treated in the household of her son. She returned to Reno about October 3, 1903, but came back to defendant's house January 8, 1904, and remained there as a member of his household until May 15, 1904, and again from December 20, 1904, until May 1, 1906. During both of these periods she was better able to care for herself than during the first period. At all times she was treated as a member of the household, and defendant testified that "she had everything that could be furnished to make her comfortable and happy." It is not denied that there was never any understanding between Mrs. Gilson and defendant that defendant was to receive any compensation for such maintenance and services, or that there never was any intimation on his part to her that he expected compensation. It must be taken as true, in view of the conclusion of the trial court, that defendant told his mother on several occasions that she was welcome to a home with him. Defendant made the same statement in a letter written to his brother in October, 1903.

On the settlement of his final account as guardian of his mother's person and estate by the Nevada court May 22, 1903, defendant was allowed fifty dollars per month as compensation for caring for his ward and managing her estate, having asked for the same in his report, and Mrs. Gilson having signed a written request, attached to the account and report, that the account be settled as presented and the requests contained in the report be granted. There was, however, evidence sufficient to support a conclusion on the part of the trial court that Mrs. Gilson, by reason of her then condition, did not realize that defendant was making any charge for her care or maintenance in his home.

It is uncontradicted that the understanding between defendant and his brother and sister at the time he first took his mother to his home was that he should have the use of Mrs. Gilson's property as compensation for her care. Mrs. Gilson, however, never knew anything about this understanding, and, of course, it was in no way binding on her, however much it may be morally binding on his brother and sister as heirs of the mother, now that she is dead.

Counsel for defendant rely strongly on the fact that there was no duty imposed by the law on defendant to maintain his mother to the extent of his ability, section 206 of the

Civil Code prescribing such duty on the part of a child being limited by its terms to cases where the relative (father, mother, or child) is poor and unable to maintain himself by work. Manifestly the mother could not by any process of law have compelled support at the hands of her son. That fact, however, is of no importance here. The question on this appeal is simply whether the facts we have stated sufficiently support the conclusion of the trial court that there was no implied promise on the part of the mother to compensate her son for the support and care given.

In *Moulin* v. *Columbet,* 22 Cal. 508, this court, after speaking of the well-settled general rule that a promise to pay for services rendered and accepted is implied, said: "Such undoubtedly is the general rule upon this question. It is founded, however, upon a mere presumption of law, and is liable to be rebutted by proof of a special agreement to pay therefor a particular amount or in a particular manner, or by proof that the services were intended to be gratuitous, or even by particular circumstances, from which the law would raise the counter presumption that the services were not intended to be a charge against the party who was benefited thereby." One of the most familiar classes of cases of the kind last mentioned is that where a claim is asserted by a child against his parent or by a parent against his child for services of the kind here involved. As was well said in *Murdock* v. *Murdock,* 7 Cal. 513: "There is, perhaps, no class of cases, assumed to be based upon implied contracts, that has more embarrassed courts and jurors than cases arising between relations. These cases are always unfortunate, and from the delicacy of the relationship existing among the parties, it is often extremely difficult to arrive at their true intention. There is so great a variety in the circumstances of different cases, that it is difficult to lay down general rules." The conclusion that one is to pay for services rendered him by another is a common-sense one to which the mind naturally comes in ordinary cases "from a knowledge of the circumstances of the particular case and the ordinary dealings between man and man." But when the services are rendered between members of the same household or between those most closely related by blood, "we find other motives than the desire of gain which may prompt the exchange of mutual benefits between them." (*Page* v. *Page,*

73 N. H. 305.) It has been said many times that the question is one that must be determined on the circumstances of the particular case, the question in each case being whether it can reasonably be inferred that pecuniary compensation was in the view of the parties at the time the services were rendered or the support was furnished. (See 21 Am. & Eng. Ency. of Law, 2d ed., p. 1061; *Murdock* v. *Murdock,* 7 Cal. 513; *Friermuth* v. *Friermuth,* 46 Cal. 42, 45.) In the consideration of such circumstances, the degree of the relationship may strengthen or diminish the implication that the services are acts of gratuitous kindness and affection, according to its proximity or remoteness. (1 Beach on Law of Contracts, sec. 653.) Our own decisions appear to support the doctrine that to authorize compensation in such cases the circumstances must be such as to warrant the inference that it was the expectation of both parties that compensation should be made. (*Murdock* v. *Murdock,* 7 Cal. 513; *Friermuth* v. *Friermuth,* 46 Cal. 42.) And it is emphatically declared in *Murdock* v. *Murdock,* that it is the expectations of the parties *existing while the relation continued* that is to control, and that no circumstance occurring afterwards can convert that into an *implied contract,* that was not so before.

It appears clear to us that we would not be warranted in holding that the conclusion of the learned trial judge on this matter was without sufficient support in the evidence. A son finding his aged mother dangerously ill and unable to care for herself, being himself comfortably situated and abundantly able financially to do so, takes her to his home and makes her a member of his household, there treating her in all respects as an affectionate son would treat his mother, and repeatedly assuring her that she was always welcome to a home with him, and never intimating that she was expected to or should in justice pay him for board, lodging, or care. It seems to us that the natural inference of any reasonable person would be that neither of the parties would expect for a moment that pecuniary compensation by one to the other was contemplated by either, and certainly that the son was prompted by no such sordid motive in thus caring for his mother, even though she had property amounting in value to ten thousand dollars, and had been living in another place for some years. It is to the credit of the defendant

that the record fails to indicate any such expectation on his part as that of being paid by his mother, quite clearly indicating to the contrary, as we read it, that the claim was due solely to the unfortunate differences subsequently occurring. Doubtless defendant expected, and in view of his understanding with his brother and sister properly expected, that, in the event of his mother's death, the agreement between them would be observed, but the trial court was fully warranted in concluding that he did not render the services under any expectation that his mother should render him any compensation.

The judgment is affirmed.

Shaw, J., Sloss, J., Lorigan, J., Melvin, J., and Henshaw, J., concurred.