[Sac. No. 1965. Department One.—January 3, 1913.]

## EMANUEL GJURICH, Appellant, *v.* FANNY FIEG, Respondent.

EMPLOYER AND EMPLOYEE—PRESUMPTIONS—PROMISE TO PAY FOR SERVICES—EVIDENCE TO REBUT—SERVICES INTENDED AS GRATUITOUS.—Ordinarily the law will imply a promise to pay for services rendered and accepted. This rule is founded on a mere presumption of law, and may be rebutted by proof of a special agreement to pay therefor a particular amount or in a particular manner, or by proof that the services were intended to be gratuitous, or even by particular circumstances from which the law would raise the counter presumption that the services were not intended to be a charge against the party who was benefited thereby.

ID.—PARTIES LIVING AS HUSBAND AND WIFE—INFERENCE OF GRATUITOUS RETURN OF SERVICES.—In the absence of an express agreement for compensation, the fact that a man and a woman, although not married to each other, had gone to certain premises belonging to her to live together and for ten years had lived together as husband and wife, mutually carrying on the business of a roadhouse and saloon, is sufficient to support the inference that no compensation in money was contemplated for any services rendered by him in and about the conduct of the business.

ID.—CROSS-EXAMINATION—EVIDENCE OF COHABITATION.—In an action by him to recover for such services, after he had testified on his direct examination that he had worked for the defendant under circumstances from which an obligation to pay for his services would be implied, it was proper cross-examination to permit the defendant to inquire concerning his cohabitation with her.

ID.—EVIDENCE OFFERED BY APPELLANT.—An appellant cannot complain of the admission of evidence which was offered by himself.

ID.—REMARK OF COURT—EFFECT OF EVIDENCE.—A remark made by the court, as to his recollection of the effect of certain findings in another action that were subsequently offered in evidence, is without prejudice, if the findings themselves showed that the court's recollection was accurate.

ID.—INSTRUCTIONS—MATTERS REFERRED TO FOR ILLUSTRATION.—It was not error for the court, in its instructions to the jury, by way of illustration of some of the circumstances which would justify an inference that services had been rendered gratuitously, to refer to the case of a son working for a father, or a woman for a supposed husband.

ID.—PLEADING—DENIAL OF INDEBTEDNESS AND EMPLOYMENT.—In such action, the mere denial of indebtedness and employment raised an issue, on which, in the absence of an express agreement, the relations of the parties became material, and justified instructions referring to their cohabitation, although such fact had not been pleaded.

ID.—PAYMENT—SEXUAL INTERCOURSE.—Where the jury were properly instructed as to the effect of the relations of the parties as tending to show that the plaintiff's services were intended to be gratuitous, it was not error for the court to refuse an instruction, requested by the plaintiff, that sexual intercourse would not constitute payment of plaintiff's claim.

APPEAL from a judgment of the Superior Court of San Joaquin County. C. W. Norton, Judge.

The facts are stated in the opinion of the court.

A. H. Carpenter, for Appellant.

Webster, Webster & Blewett, for Respondent.

SLOSS, J.—The action was brought to recover a balance of five thousand dollars, claimed to be due to plaintiff from defendant "upon an open book account and an open, mutual and current account," for work and services rendered by plaintiff at defendant's request, "for which said services the defendant promised and agreed to pay plaintiff the said balance of said account and the amount so alleged to be due thereon." The answer denied the indebtedness. A trial before a jury resulted in a verdict in favor of the defendant. The plaintiff appeals from the judgment, bringing up the evidence under the method provided in section 953a of the Code of Civil Procedure.

1. There is no merit in the contention that the verdict is not sustained by the evidence. There was testimony tending to show that in 1897 the defendant, pursuant to plaintiff's advice, purchased a small tract of land a few miles from Stockton, and established a roadhouse and saloon there. Thereupon she and the plaintiff took up their residence upon the premises and lived there for some ten years. During this time the plaintiff was engaged in working on the place, de-

voting his time to the care of the grounds, planting of trees and vines, construction of arbors, building additions to the house, and other things. The defendant tended bar, and took care of the saloon. From the outset of their residence on the premises, and for a number of years thereafter, the parties occupied the same bedroom, living together as husband and wife. An offer of marriage had been made by plaintiff to defendant, and accepted by her. No marriage was ever solemnized, however. These relations commenced and continued without any specific agreement for the payment of wages by defendant to plaintiff. Gjurich was given money from time to time for the purpose of purchasing articles and supplies required on the place, and out of this money he retained what he desired for his own use.

The foregoing statement is based, in large part, upon the testimony of the defendant. In many particulars, the evidence offered by plaintiff was in conflict with that of the defendant. But where the verdict is attacked for insufficiency of evidence, our power begins and ends with the inquiry whether there is substantial evidence, contradicted or uncontradicted, which, in and of itself, would support the conclusion reached by the jury. If, on any material point, the testimony is in conflict, it must be assumed that the jury resolved the conflict in favor of the prevailing party. For this reason we attach no importance to an alleged written agreement by the defendant to pay plaintiff three dollars per day. The defendant denied the execution of the writing, and her denial was enough to authorize the jury to find, as it impliedly did, that the agreement relied upon had never been made. The same observation may be applied to the claim of an antecedent oral agreement to pay wages.

The facts, as hereinabove stated, clearly justified the verdict. Ordinarily, no doubt, the law will imply a promise to pay for services rendered and accepted. But this rule is founded ''upon a mere presumption of law, and is liable to be rebutted by proof of a special agreement to pay therefor a particular amount or in a particular manner, or by proof that the services were intended to. be gratuitous, or even by particular circumstances from which the law would raise the counter presumption that the services were not intended to be a charge against the party who was benefited thereby.''

(*Moulin* v. *Columbet,* 22 Cal. 508.) Thus, where there is a blood relationship between the parties, it may well be inferred, in the absence of a direct understanding to the contrary, that pecuniary compensation was not expected by the one performing the services. (*Page* v. *Page,* 73 N. H. 305, [6 Ann. Cas. 510, 61 Atl. 356]; *Murdock* v. *Murdock,* 7 Cal. 513; *Friermuth* v. *Friermuth,* 46 Cal. 42; *Crane* v. *Derrick,* 157 Cal. 667, [109 Pac. 31].) "The question is one that must be determined on the circumstances of the particular case, the question in each case being whether it can reasonably be inferred that pecuniary compensation was in the view of the parties at the time the services were rendered." (*Crane* v. *Derrick,* 157 Cal. 667, [109 Pac. 31].)

These principles were embodied in the instructions to the jury. The general verdict in favor of the defendant carried with it implied findings that there had been no express agreement, oral or written, for compensation, and that, in view of the circumstances under which the parties had gone to the land, and lived and labored together there, the plaintiff had rendered services without any expectation of pecuniary payment therefor. These were legitimate conclusions from the evidence. The testimony of the defendant was direct to the point that there had been no express agreement for compensation. And, if that were so, the fact that the parties had gone to the premises to live together and had lived together as husband and wife, afforded a sufficient basis for the inference that compensation in money for any services rendered was not contemplated. The relation existing, although meretricious, may be considered as illustrating the purpose and expectation with which work was done by each.

2. The court did not err in permitting the defendant, on cross-examination of the plaintiff, to inquire concerning his cohabitation with the defendant. The plaintiff, on direct examination, had testified that he had worked for defendant under circumstances from which an obligation to pay for his services would be implied. The relations between the parties had a tendency to rebut this implication, and formed, therefor, a proper subject for cross-examination. The questions, then, did not relate to collateral matters, and the defendant was not, as is claimed, bound by plaintiff's answers, and thus

precluded from asking further questions for the purpose of impeachment.

The same reasoning on which the cross-examination of plaintiff is held to be proper justifies the rulings of the court permitting the defendant to testify concerning her relations with plaintiff.

3. In 1907 the defendant conveyed the premises to plaintiff. Thereafter she brought an action to set aside the conveyance, alleging that she had been induced to execute it by means of fraud practiced by the plaintiff. The value of the property was estimated to be two thousand dollars. The plaintiff, in order to account for his failure to credit the defendant with this transfer as a payment of two thousand dollars on his claim, offered in evidence the judgment, rendered in the action brought by defendant against him, and setting aside the said conveyance. The judgment was not then final, although it has since been affirmed in this court. (*Fieg* v. *Gjurich,* 163 Cal. 740, [127 Pac. 49].) It is now argued that the judgment was not admissible, because the cause in which it was rendered was still pending on appeal. But of course the appellant, having offered the evidence himself, cannot complain of its admission.

It is also claimed that the court erred in admitting the findings upon which the judgment in *Fieg* v. *Gjurich* was based. But this evidence, too, was offered by the plaintiff. He first offered the judgment alone. The defendant insisted that the entire judgment-roll should go in. The court expressed the view that all should be offered. Thereupon the plaintiff, acting, as his counsel said "under the advice of the court," offered the findings and the decree. If the findings were not admissible, the plaintiff waived his right to object by offering them himself. He might have preserved his point by insisting upon his offer of the judgment alone, and taking an exception to a ruling excluding it. But, instead of so doing, he offered the findings himself.

In the course of a prior colloquy, in which counsel were seeking to agree on a stipulation concerning the former judgment, the court stated its recollection to be that the findings had been that the deed was obtained by fraud. Inasmuch as the findings themselves, showing the court's recollection

to be accurate, were subsequently admitted, the plaintiff could have suffered no prejudice from this remark.

It was not misconduct for defendant's counsel, in arguing to the jury, to refer to the matters covered by the findings which were before the jury.

4. We see no error in the instructions. As we have already intimated, they covered with fullness and accuracy the propositions of law governing the principal issue in the case. It was not improper for the court to refer to the case of a son working for a father, or a woman for a supposed husband. These were mere illustrations of some of the circumstances which would justify an inference that services had been rendered gratuitously, and were appropriate as aids to the jury in determining whether compensation was expected in the case at bar, which was in some degree parallel to those suggested.

It is argued that instructions referring to the alleged cohabitation of the parties were erroneous, because they dealt with matters that had not been pleaded. But the mere denial of indebtedness and employment raised an issue, on which, in the absence of an express agreement, the relations of the parties became material.

The court refused to charge, as requested by plaintiff, that sexual intercourse would not constitute payment of plaintiff's claim for wages. This instruction had no application to any issue in the case. The defendant did not rely upon the cohabitation as payment. Her contention was merely that her relations with plaintiff were to be considered in determining whether a claim for wages had ever existed. The offered instruction could only have served to confuse the jury.

Certain instructions relative to the statute of limitations are criticised by plaintiff. Their effect was to limit any recovery to the amount earned in the statutory period next preceding the commencement of the action. We think the instructions were correct, but the verdict found makes it unnecessary to discuss the particular objections urged. The jury found, in effect, that there never had been any liability on defendant's part to pay wages to plaintiff. It is, therefore, immaterial whether the court was right or wrong in directing them that, if they found a liability, they could award wages for only a given time.

There are no other points of sufficient consequence to require notice.

The judgment is affirmed.

Angellotti, J., and Shaw, J., concurred.

Hearing in Bank denied.