JOSEPH FRANKENBERGER, Respondent, *v.* ALEXANDER SCHNELLER et al., as Executors of BERNHARD SCHNELLER, Deceased, Appellants.

(Argued November 30, 1931; decided January 5, 1932.)

*Samuel Seabury, William J. Grange* and *Charles Hollender* for appellants. The testimony fails, as a matter of law, to establish the contract alleged in the complaint. (*Hamlin* v. *Stevens,* 177 N. Y. 39; *McKeon* v. *Van Slyck,* 223 N. Y. 392; *Holt* v. *Tuite,* 188 N. Y. 17; *Rosseau* v. *Rouss,* 180 N. Y. 116; *Wildman* v. *Jones,* 150 App. Div. 514; 209 N. Y. 531; *Robinson* v. *Munn,* 238 N. Y. 40; *Walrath* v. *Insurance Co.,* 216 N. Y. 220; *Southwick* v. *Bank,* 84 N. Y. 420.)

*Caruthers Ewing* for respondent. There were no conflicting inferences which could fairly and honestly be drawn from the undisputed evidence, and only in this situation does an issue of fact arise. (*Matter of Totten,* 179 N. Y. 112; *Hirsch* v. *Jones,* 191 N. Y. 195; *Tousey* v. *Hastings,* 194 N. Y. 79; *People* v. *Clougher,* 246 N. Y. 106.) When declarations or admissions are deliberately made and are clearly proved, they afford very strong and satisfactory evidence of the fact admitted or asserted. (*McRorie* v. *Monroe,* 203 N. Y. 426.) Ample consideration is found in any promise duly performed which limits one's freedom of action. (*Hamer* v. *Sidway,* 124 N. Y. 538.)

LEHMAN, J. The plaintiff entered the decedent's employ in 1917. He was a nephew of the decedent's wife. Doubtless the family relation affected to some extent the terms of employment, and the wages paid

to the plaintiff may not have been the sole reward the plaintiff expected. The evidence shows that, in addition to wages, the decedent gave to the plaintiff a house and an inexpensive bungalow and that he expressed to numerous witnesses an intention, at his death, to leave the plaintiff the sum of $50,000 if the plaintiff remained in his employ until that time. Indeed, after his first wife's death in 1925 he made a will containing such a conditional bequest. Then he transferred to another nephew the business in which the plaintiff was employed and obtained a promise from the nephew who took over the business that he would continue to employ the plaintiff and pay him in addition to his wages the sum of $1,000 a year. Even then the decedent insisted that each day he must have the " first call " on plaintiff's services to drive his car or do other work for him. Before his death the decedent revoked his will and left nothing to the plaintiff. Now the plaintiff brings this action to recover the sum of $50,000 upon an alleged oral contract made with the decedent in 1918 whereby " the plaintiff was to work for the decedent as a chauffeur and in other capacities, from that date up to his death at an inadequate wage for the services being then and expected thereafter to be rendered, in consideration of said decedent's agreement that at his death plaintiff was to receive $50,000."

Two former employees of the decedent testified that he told them that he had " promised " to leave plaintiff $50,000 if plaintiff " stayed " with him till his death. The testimony of the other witnesses produced by the plaintiff shows that the decedent had benevolent testamentary intentions — but nothing more. No witness testifies that he was present when the decedent made such a promise to the plaintiff. We are without information of the circumstances which led the decedent to make the alleged promise. We do not know whether the plaintiff at that time was satisfied with the compensation he was receiving or whether he contemplated seek-

ing other employment. Certainly no inference can be drawn that the decedent's promise to leave him $50,000 at his death, if plaintiff stayed with him till then, was made, in consideration of a promise, given by plaintiff in return, to remain in his employ till then. The evidence entirely fails to sustain a finding that the bilateral contract alleged in the complaint was ever made.

Nor is the evidence sufficient to show a unilateral contract which became binding when the plaintiff by performance of services, stipulated as the consideration for the promise, accepted the decedent's offer. The admissions of the decedent that he did make such a promise are equivocal. They are capable of construction that the alleged promise was merely the expression of a testamentary intention for which he neither asked nor received any consideration and which might be changed at his will. We may not weigh the evidence nor set aside inferences drawn by the jury if supported by the evidence though we might draw other inferences. Here the plaintiff must establish that the decedent's alleged promise was made and understood, not as a mere expression of intention, but as the assumption of a binding obligation in consideration of a promise given by the plaintiff in return, or of performance by the plaintiff of a stipulated act. That the plaintiff has wholly failed to do.

The plaintiff has received wages for the services he has rendered to the decedent. For many years he may have relied on the decedent's benevolent testamentary intentions and generosity for further reward, or he may have relied on a promise which he regarded as binding. It is certain that the decedent reconsidered his benevolent intentions. The decedent cannot contradict the testimony of the alleged admissions or explain the admissions if made. Recovery against his estate cannot be based on disappointed expectations or even on expression of intention, in the form of a promise which was not carried out. The evidence is insufficient to show more.

The judgment of the Appellate Division and that of the Trial Term should be reversed and the complaint dismissed, with costs in all courts.

CARDOZO, Ch. J., POUND, CRANE, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Judgments reversed, etc.