### ANDERSON, Exr et v HOUPT

Ohio Appeals, 5th Dist, Richland Co

No 405. Decided Sept 21, 1932

C. H. Workman, Mansfield, for plaintiff in error.

Reed & Beach, Mansfield, for defendant in error.

LEMERT, J.

The errors complained of are as follows:

1. Error in admission of the alleged account.

2. Claim is made that no contract either express or implied, was proven.

3. Error in giving a charge based on circumstances.

4. The verdict was against the weight of the evidence.

5. Error in excluding James H. Kincaid as a witness and his testimony.

After an examination of the record in the instant case, we are of the opinion and so find that there is no error on the first, third and fourth grounds.

As to the second claimed error, to-wit: That there was no contract express or implied proven presents a serious question for our determination.

We find on page 44 of the record in the cross examination of Glenn Houpt, husband of the plaintiff below, the following:

Q. Did you commence just as soon as Mrs. Kincaid died, did your wife commence to keep a book account?

A. Yes.

Q. You never said anything about it to Robert Kincaid that you were going to charge him, did you?

A. No, sir.

Q. And you don't know that your wife ever did?

A. I know she did not.

·Q. So the fact is that you and your wife neither of you told Robert Kincaid you were making any charge against him for board, washing, or ironing, or taking care of the yard and furnace, you never told him that?

A. No, sir.

Q. And yet you went on for three years after that and at no time before he died, did you ever tell him that you and your wife intended to charge him for anything you and your wife had done in the way of services?

A. No sir.

On pages 60 and 61 of the record, we find the following:

Q. I want you to get the truth and the facts about this—every time you gave Robert Kincaid one of these checks, and there are 20 of them, did you have a settlement?

Q. (Question repeated) Every time you gave Robert Kincaid a check, then you had a settlement with him, didn't you?

A. In what respect?

Q. How does it come that some of the checks are for $45.00, $22.00 and another one for $31.00 and another one for $10.00 and another one for $10.00, how does it come they differ?

A. $9.00 is rent, and the balance is one-half of the light bill and one-half is for water.

Q. Every time you gave him a check you had a settlement?

A. For light, water and rent.

Q. . That was your contract with Robert Kincaid, was it not?

A. To pay one-half the light, one-half the water and rent.

Q. That was the whole contract?

A. It wasn't a whole contract.

Q. That did not comprise all your relations between each other?

A. As far as light, water and rent is concerned, there was no contract between Robert Kincaid and my wife and me.

Q. And each settlement was a new contract and a final thing?

A. For water, rent and gas.

Q. Did you have any agreement as to that before the bills were figured?

A. Sure.

Q. Why didn't this include board, washing and ironing, why didn't that agreement include that?

A. In regard to that, we had kind of thought that Mr. Kincaid would remember us in his will and that is one reason why we kept the account book. If he did not remember us in his will, we had something to fall back on.

Q. And so you had no agreement at any time for the three years?

A. No sir, we did not.

Q. Who do you mean by "we"?

A. The wife and me with Robert Kincaid.

The record disclosed that Robert Kincaid was an old soldier about the age of 90 years and the record just quoted disclosed that the plaintiff below and her husband withheld from this old gentleman any knowledge that they ever expected to charge him for the services for which they make claim and when pressed on cross examination, they say that they expected a legacy and they were disappointed and they are now going to make a charge and recover on that charge in a court.

The courts of this state and other jurisdictions have repeatedly held that the expectations of a legacy for services rendered if such expectation is gratuitous service for which there can be no recovery. Elliott on Contracts, Volume 2, §1363 and authorities therein cited. It has been held that contracts with nurses, housekeepers, etc., sought to be in force after the death of the person to whom the services were rendered ought to be very closely scanned and juries instructed that they should be made out only by very clear proof. 71st Pacific Reporter, 161, it was held where services gratuitously rendered under the expectation of a legacy, there can be no contract and therefore no recovery for services. 82nd Atlantic, 996, it was held that a man who expects to be benefitted by a legacy cannot afterwards resort to an action for services rendered where a mere expectation is shown and no express contract for payment for services rendered is proven.

The record before us in the instant case discloses that there was a family relationship existing between the parties herein. It has been held that no contract to pay for services as between parties occupying family relationship will be implied even though performer is a stranger and not blood relative. 203 Ky. 606. The Supreme Court of Ohio in the 65th Oh St 104, it was held: "The meeting of the minds of parties upon its terms is necessary to the making of a contract; and this is so whether it be an express contract or an implied one, if, in the latter case, the contract to be proved is an actual one as distinguished from a constructive contract."

In the instant case, no express contract is claimed and no implied contract can be inferred. The fact that the plaintiff relied upon a legacy, that fact in and of itself, negatives the existence of any contract, express or implied having existed between the parties during the times the services were being performed. Or, in other words, the minds of the parties could not have met upon the subject of compensation when the plaintiff doing the work was relying upon a legacy. The secret intent of the plaintiff, if he had any such intent, was never communicated to Mr. Kincaid and there was no understanding and the facts in the record do not show any such understanding that the plaintiff was to receive compensation.

Therefore, the plaintiff below, having failed to prove or establish a contract, either express or implied, the motion to direct a verdict for the defendant was properly made and improperly overruled. There was nothing to submit to the jury.

Upon the 5th proposition, the defendant below, the executor offered James H. Kincaid as a witness to testify as to facts that occurred prior to the death of the testator relative to the issue. On objection of the plaintiff, he was excluded and his testimony excluded as appears on pages 102 and 103 of the record. Exceptions to the ruling of the court were properly preserved.

It is to be observed that James H. Kincaid was the sole legatee of Robert Kincaid and in accord with provisions of §10724 GC had entered into a bond approved by the Probate Judge of Richland County, Ohio, to pay all the costs and expenses of contesting such claim and by force of the provisions of the next succeeding section, §10725 GC, James H. Kincaid became a party defendant with the executor and had the right to plead and make a defense to the action.

It is to be observed that the language of §10725 GC makes it mandatory that such legatee must be made a party for the statute says: "shall be made a party defendant with the executor." This statute has been so construed by our courts. James H. Kincaid had the right to plead and he had the right to make a defense. It is claimed by the plaintiff in error that James H. Kincaid was an incompetent witness under the provisions of §11495 GC. It should be observed that James H. Kincaid was not adverse to the executor. He was adverse to the claimant, the plaintiff, but not adverse to the executor. The executor should do all that he can to protect the interests of the estate and let no evidence go by to protect the estate. While it is true under §11495 GC the plaintiff was an incompetent witness, she could not testify because the adverse party was an executor but this does not prevent the executor from testifying or being used as a witness. In 20th Oh Ap 497, "In an action against an executor, and heirs of deceased on note executed by deceased, claim on which had been rejected under §10724, GC, held that, as heirs were necessary parties under §10725 GC and had right to make any defense that executor could make, where executor did not actively participate in trial, court properly permitted heirs to call plaintiff as on cross examination, notwithstanding §11495 GC."

We believe that to exclude James H. Kincaid as a witness was to deny the right of the jury to receive the truth and facts from one who had perceived the relations of the parties during the three years in controversy, 1928, 1929 and 1930. The Supreme Court in the case of Roberts v Briscoe, 44 Oh St 595-604, has treated upon this very subject. We believe this case bears out what can be done and what can not be done in the way of inclusion and exclusion of witnesses under the provisions of §11495 GC.

In this case, at page 602, the courts say, "But what is intended for the benefit and protection of the estate should not be permitted to operate as a source of injury." And at page 603, the court says: "It is obvious that the interests of the testator's estate should be the paramount idea of the executor, and the law contemplates that if he has knowledge that can be made to inure to the benefit of the estate, he will be ready to bear witness, though in so doing he must waive the privilege of ex-

cluding the opposite party from testifying, and open the door to his admission."

We, therefore, find and hold that the exclusion of James H. Kincaid as a witness and his testimony was error. Therefore, upon the 2nd and 5th grounds alleged in the petition in error, we find that error had intervened in this case, and it therefore follows that the finding and judgment of the court below will be and the same is hereby reversed and said cause is hereby remanded to the Court of Common Pleas.

Exceptions may be noted.

SHERICK, PJ, and MONTGOMERY, J, concur.