[Civ. No. 20079.   Second Dist., Div. Two.   Oct. 25, 1954.]

WILLIAM L. PAYNE, Appellant, v. BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION (a National Banking Association), as Executor, etc., Respondent.

Combs & Hoose, Lee Combs and Harned Pettus Hoose for Appellant.

Henshey & Beeman for Respondent.

FOX, J.—Plaintiff appeals from an adverse judgment in an action brought to recover $12,125 for services rendered by him to defendant's testator, Harvey Priester, including the reasonable value of the use of plaintiff's furniture.

The complaint consisted of six counts. One count was based on an oral contract under which plaintiff claimed Priester agreed to pay him the reasonable value of services performed "in the capacity as accountant, business adviser, investment counsel, insurance adviser, director in decedent's business, and as a nurse, protector and confidante, and in connection with the keeping and soliciting of accounts for insurance by decedent." Another count was grounded on an unfulfilled promise of the decedent, Priester, to reimburse plaintiff for the services enumerated above, as well as for the use of certain of plaintiff's furniture, either in "cash or by the transfer to plaintiff at the date of his death of one half of decedent's estate." In two of the counts, plaintiff alleges causes of action based on the theory of a *quantum meruit* recovery. Plaintiff also sued on common counts for the reasonable value of his services and use of the furniture belonging to him. The complaint alleges that plaintiff duly presented a claim for $12,125 to defendant, as executor of the estate of Harvey Priester, and that said claim was rejected. Defendant in its answer denied the allegations of plaintiff's complaint and also set up the defense that each of the causes of action was barred by subdivision 1 of section 339 of the Code of Civil Procedure.

The case was tried without a jury. By defendant's invoking section 1880, subdivision 3, of the Code of Civil Procedure, which forbids a plaintiff's giving testimony in support of his claim against a decedent, plaintiff was precluded from testifying concerning his claim. Plaintiff called six witnesses with respect to the character of the services he rendered and the promise to compensate him therefor. One of his principal

witnesses was Stanley Lindahl, another close friend of Priester, who had likewise presented a claim for compensation for services rendered the decedent in the declining days of his life. Plaintiff had previously testified for Lindahl in the latter's action against Priester's estate.

Plaintiff and the decedent, Harvey Priester, had known each other for about 20 years. Their friendship had grown very intimate; they were inseparable, bosom friends. They dined frequently at each other's home and had mutual business interests. They had occasionally made joint investments in property and would sometimes purchase shares of stock in the same company. They often discussed financial and business affairs during their numerous social visits.

Priester had owned and operated an insurance business since about 1933. His office manager, Miss Trase Palmer, testified that up until April or May of 1950, Priester customarily arrived at the office about 11 a.m. and left at 2 p.m. He spent the balance of the day on the outside. Plaintiff, an accountant by profession, became employed in about 1940 as secretary-treasurer of a firm named Dodge, Incorporated. He handled the insurance business and related matters of the Dodge company, which had been one of Priester's insurance accounts long prior to plaintiff's employment there. The Dodge account comprised about five per cent of Priester's business and required periodic discussion with plaintiff. Priester's income tax returns were prepared by plaintiff, who submitted regular bills for this service, all of which were paid.

In the summer of 1947, Priester underwent an operation on his back, which disabled him for about two months. Miss Palmer testified that upon his return he was able to resume his accustomed routine for the next few years. Early in 1950 he began to suffer increasingly from an abdominal ailment. In August, 1950, plaintiff was visiting Priester at his home when Priester hemorrhaged and had to be taken to a hospital, where he spent five days. Thereafter, Priester continued to go to his office on a curtailed basis until he reentered the hospital in the latter part of September, 1950, for abdominal surgery. After a month in the hospital, Priester returned home where he remained under the care of a registered nurse, Ona O'Neill, until December 12, 1950. Miss O'Neill testified that plaintiff spent several nights at Priester's house after his return from the hospital and that he was a constant visitor during her employment there. When questioned about the content of plaintiff's conversations with Priester, she

stated some of it was of a business nature concerning insurance, but she was unable to ascertain whose insurance was involved. In January, 1951, Priester entered a sanitarium and stayed until early in April. Plaintiff and Lindahl visited Priester while he was there. From April 7 to May 13, 1951, Priester spent his time sojourning in Apple Valley and Lake Arrowhead. He was attended by a combination male nurse and chauffeur. Plaintiff visited Priester in Apple Valley and drove him to Lake Arrowhead.

Priester returned to his home in May, 1951, and stayed there until his death on August 11, 1951. The household help included a housekeeper-cook and a nurse who was on duty until Priester died, with an additional nurse when his condition worsened near the end. Miss Palmer continued to have charge of Priester's office, attended to his insurance business and supervised the work of a bookkeeper and stenographer. She testified that she had run the office since 1940.

Mr. Lindahl testified at length concerning plaintiff's services to decedent. He stated that plaintiff advised Priester with reference to investment matters, but he was able to refer specifically only to an investment possibility in a plastic business that Priester asked plaintiff to check for him. He stated that plaintiff and Priester often discussed stocks, properties, and real estate, but he could recall the name of only one stock, and this was one purchased by both men. He did not recall any particular parcel of real estate that was discussed, but did know both men held a mortgage jointly. He asserted Priester would often consult with plaintiff "regarding different phases of the insurance business," but Lindahl said these consultations usually took place during social occasions and he could give no details beyond his general statement. Lindahl estimated that plaintiff visited with Priester each day for periods ranging from one-half hour to five hours during the last year of decedent's life, took him for walks and drives, and engaged doctors and nurses for him.

Other witnesses, including plaintiff's son and two mutual friends, testified to purported financial advice given decedent by plaintiff as well as counsel allegedly given him with respect to his insurance business. These discussions were almost invariably held on social occasions, during the final year of decedent's life, and the testimony as to the nature of the discussions was either vague and nebulous or admittedly conducted outside the presence of the witness. Miss Pape, an employee of the Dodge company, testified that during the last

eight or nine months of Priester's life he talked on the telephone almost every day with plaintiff, primarily about insurance. However, the only insurance matters she heard discussed were the policies involving the Dodge company. On occasion she heard Priester ask plaintiff to come to his home as soon as he could.

Miss Palmer also was comprehensively examined. She testified that since plaintiff was Priester's best friend, she naturally turned to him with respect to various personal affairs which arose when Priester was ill. Plaintiff was consulted by Miss Palmer regarding the employment and payment of certain of Priester's servants and the checking of his hospital and medical bills. Plaintiff and Miss Palmer looked after a boat owned by Priester when it was not in running condition. From time to time after his day's work at Dodge was over, plaintiff stopped by at Priester's office and discussed insurance collections with her, and occasionally with Priester at the latter's home. Miss Palmer testified that plaintiff rendered no services as an auditor, and none as an accountant other than the preparation of the income tax returns for which he was paid.

Lindahl testified that on several occasions he heard Priester tell plaintiff that "he would be taken care of," that "he would take care of him later." Miss O'Neill testified in the same vein. She stated that while she was nursing him, Priester "would tell me what a grand person Mr. Payne was, and that they had been such long friends, and what Mr. Payne had done for him, and that sort of thing. And I told him it was certainly wonderful to have friends like that. And he said, 'Well, he will be well paid for it,' . . ."

Miss Palmer testified to a conversation she had with plaintiff a week before Priester died. Plaintiff telephoned her one evening from Priester's house to advise her Priester wished to speak with her. Priester then told her: "Bill [plaintiff] is here and we are going over some matters. You get the insurance policy . . . and . . . the insurance business. I am giving Bill $1,000.00 and Edna [the nurse] is in the room as a witness." Plaintiff received the sum of $1,000 mentioned above in cash.

Priester died testate and his will was admitted to probate. The probate file was received in evidence. By his will, Priester bequeathed his insurance business to Miss Palmer provided she survived final distribution of the estate. After making certain legacies, the will provides that a residuary trust be

set up, with Priester's sister, Alma, as life beneficiary thereof, the trustee to have discretionary power to invade the corpus for the care and maintenance of Alma Priester. Plaintiff was given a contingent interest. The will provided that if plaintiff were living at the termination of the trust, or if Alma Priester failed to survive distribution, then plaintiff would receive either one-half the corpus of the trust, or one-half the residue of the estate, as the case might be. Plaintiff's interest was appraised by the California Inheritance Tax Appraiser as having a value of $13,114.51.

We have carefully considered the court's findings, certain of which consist of philosophical observations upon the priceless gift of friendships and are immaterial, while some, clearly irrelevant because of other findings made which fully dispose of the contested issues, may be disregarded as surplusage. Such findings as are essential and determinative of the questions here posed are as follows: that deceased, during his lifetime, employed plaintiff as an accountant, but that these services were limited to the preparation of the annual income tax returns of deceased and to occasional advice to deceased's bookkeepers as to the posting of items pertinent to income tax matters; that plaintiff made annual charges for his accounting services for each of the years from 1947 to 1951, inclusive, all of which were paid, the last statement for such services having been rendered by plaintiff in July, 1951.

The court further found (Finding V): "It is not true that deceased during his lifetime employed and/or retained the services of plaintiff under an oral or written contract or otherwise to perform services in the capacity of business adviser and/or investment counsel and/or insurance adviser and/or director in decedent's business and/or nurse and/or protector and/or confidante and/or in connection with the keeping and/or soliciting of accounts for insurance by decedent. It is not true that decedent agreed to pay or to reward plaintiff for such alleged services or for any thereof the reasonable value thereof on or before the date of decedent's death, and it is not true that decedent agreed to pay plaintiff the reasonable value of such alleged services or any thereof if plaintiff continued to render such services or any thereof to and until the death of decedent. It is true that plaintiff and decedent were close friends over a period of many years, that as such they transacted business one with the other and on many occasions talked over and exchanged opinions and advice on matters of insurance and

other business affairs; that during a period of approximately two years immediately preceding deceased's death plaintiff, as an admirable and faithful friend, was attentive to deceased, spent considerable time with him and performed many kindnesses and services for him, that deceased availed himself of plaintiff's friendship and willingness to be helpful and utilized plaintiff's time and assistance on many occasions, that decedent, in his illness, depended many times on his loyal friend, the plaintiff, for counsel and assistance. That at some time or other during the relationship between them, as thus described, both of them came to have the understanding and intention that the deceased would make some provision in his will for the plaintiff whereby plaintiff would be rewarded in some measure for his kindnesses to and services for his friend, the deceased; that, except for the services mentioned in paragraphs III and IV hereof [relating to payments for income tax work], and except for an expected and intended reward and compensation to be effected by will, as herein found, the parties did not intend or agree or understand that plaintiff's said services or any of them would be on a commercial basis to be charged or paid for; and both understood that such services, . . . were the kindly ministrations of a devoted friend to a friend, for which no charge was to be made, but which would be recognized, remembered and rewarded in some measure in the will of the deceased, who did not agree to pay or reward plaintiff otherwise.''

The court found that except for the obligation to pay for plaintiff's income-tax work, no agreement existed by which decedent was to pay plaintiff for any services in cash or by the transfer to plaintiff at the date of his death of one-half or of any other specific portion of decedent's estate; that because of the findings made, ''it becomes immaterial for the court to determine what plaintiff's services to deceased might have been reasonably worth if those services had been rendered on a commercial basis and either party had understood that they were to be paid for on such a basis; but the court does find that if the services had been performed on such a basis and under such an understanding, they would have had a substantial reasonable value.''

After finding that decedent did not rent any furniture from plaintiff between 1935 and 1942, and that decedent was not indebted to plaintiff in the sum of $12,125 for services rendered and the use of personal property as alleged in certain of plaintiff's causes of action, the court found: ''It is true that

deceased died without having paid plaintiff for the services and assistance herein described except that deceased did pay, as herein found, for all services mentioned in paragraphs III and IV hereof and except also that shortly before his death he caused to be paid and delivered to the plaintiff the sum of $1,000.00 in cash. It is true that plaintiff filed a claim against the estate of the deceased with the executor thereof as alleged in the complaint, and it is true that said claim was rejected by the executor and has not been paid. The court finds that the deceased did by his last will remember and provide for the plaintiff; that said will has been admitted to probate in this court, and the administration of the estate of deceased is now in progress; that by the terms of said will the deceased devised and/or bequeathed to plaintiff property which was appraised by the California Inheritance Tax Appraiser as having a value of $13,114.51, a value which has been approved by this court in exercise of its jurisdiction as a probate court; that plaintiff has not renounced or waived said benefits from said will.''

Plaintiff makes a forceful attack on the findings and judgment, contending that the findings are without support in the evidence, and that the judgment is contrary to the profusion of cases which have allowed recovery for the reasonable value of services rendered a decedent by a person not a member of his family. Before exploring the merits of this argument, we direct attention to the following language from *Lloyd* v. *Kleefisch,* 48 Cal.App.2d 408 [120 P.2d 97], one of plaintiff's cited authorities, which we deem quite applicable to the instant case: ''After reading the record, we are of the opinion that, so far as the sufficiency of the evidence is concerned, this is a typical fact case. Had the jury brought in a verdict in favor of appellant there is ample evidence and inferences therefrom that would have supported such a verdict. But there is also ample evidence with inferences therefrom to support the contrary verdict. Under such circumstances, this court has no power to interfere with the judgment.''

Plaintiff produced no credible evidence of any express contract on the part of Priester to compensate him for the services he might have performed in his behalf. ■ Nevertheless, it is the general rule that where services are performed by one, not a member of the family, and such services are voluntarily accepted, the law implies a promise upon the part of the recipient to pay what the services are reason-

ably worth. (*Lloyd* v. *Kleefisch, supra,* p. 412; *Mayborne* v. *Citizens T. & S. Bank,* 46 Cal.App. 178, 181-182 [188 P. 1034]; *Moore* v. *Spremo,* 72 Cal.App.2d 324, 329 [164 P.2d 540].) ■ This rule, however, is founded upon a mere presumption which may be rebutted in divers ways, including proof that the services were intended to be gratuitous (*Moulin* v. *Columbet,* 22 Cal. 509; *Crane* v. *Derrick,* 157 Cal. 667, 671 [109 P. 31]; *Estate of Hanson,* 133 Cal. 38 [65 P. 14]; *Smith* v. *Riedele,* 60 Cal.App. 551 [213 P. 281]), or by a showing that they were such offices or favors as one devoted friend might perform for another during a period of illness, distress or other travail without expectation of pecuniary reward. (*Morton* v. *Angst,* 36 Cal.App. 644 [173 P. 90]; *Dallman* v. *Frank,* 1 Cal.App. 541 [82 P. 564]; *Cook* v. *Bryson,* 89 Cal.App. 445, 448 [265 P. 289]; Anno. 54 A.L.R. 548.) ■ "A promise to pay for services can, however, only be implied when they are rendered in such circumstances as authorized the party performing to entertain a reasonable expectation of their payment by the party benefited. The service or other benefit must not be given as a gratuity or without expectation of payment, and the person benefited must do something from which his promise to pay may be fairly inferred." (12 Am.Jur., § 5, pp. 501-502.)

■ The question of whether services were performed without expectation of monetary compensation, the parties having understood they were being gratuitously rendered or whether it can reasonably be implied that payment was in the contemplation of the parties, is one of fact to be gleaned from the circumstances of the particular case. (*Crane* v. *Derrick, supra,* p. 672; *Cook* v. *Bryson, supra,* p. 449.) ■ It is the expectation of the parties existing at the time the services were rendered or the benefits conferred that controls. (*Newbert* v. *McCarthy,* 190 Cal. 723, 725 [214 P. 442]; *Crane* v. *Derrick, supra; Cook* v. *Bryson, supra; Murdock* v. *Murdock,* 7 Cal. 511.) ■ If at the time the services were originally rendered they were intended to be gratuitous or as an accommodation, motivated by friendship, kindness, or some other significant relationship existing between the parties, and were tendered without any expectation of remuneration, they cannot afterwards be converted into an obligation to pay their reasonable value under the theory of an implied contract. (*Newbert* v. *McCarthy, supra; Moulin* v. *Columbet, supra; Crane* v. *Derrick, supra; Cook* v. *Bryson, supra.*) ■ Tested by the principles hereinabove expressed, the

evidence in the instant case and the inferences reasonably drawn therefrom support the court's finding that it was not the expectation of the parties at the time the services were rendered that such services "would be on a commercial basis to be charged or paid for" and that both understood that such services "were the kindly ministrations of a devoted friend to a friend, for which no charge was to be made, but which would be recognized, remembered and rewarded in some measure in the will of the deceased, who did not agree to pay or reward plaintiff otherwise." In the light of all the circumstances and the situation of the parties at the time the services were rendered, this was a fair and reasonable implication that might be derived from the evidence adduced. The circumstances under which the services were performed very naturally suggest, not that the parties intended to enter into a tacit contractual relation, but that plaintiff originally tendered his advice, aid, and ministrations to Priester as a friend of long standing, animated by affection and solicitude for a stricken comrade, with no thought of demanding reimbursement therefor; and the implication is equally compelling that Priester never expected, nor had reason to expect, that plaintiff was performing such services on a mercenary basis.

Furthermore, plaintiff was an accountant and an experienced businessman who could be expected to render bills for any services which he was rendering decedent on a commercial basis. He did so annually with respect to the income-tax work he performed for Priester, and submitted his last statement of charges in the month before Priester died. Yet the record is barren of any substantial indication that plaintiff intended to charge for the services on which he now bases his claim. While plaintiff discommoded himself greatly, and gave substantially of his time and energy, most of the care and assistance he rendered was after the regular hours of his own job and on weekends, and much of it was in the framework of the social pattern that prevailed between decedent and himself for many years prior to Priester's illness. The trial court was justified, from a consideration of the nature and character of the services rendered and the situation of the parties, in concluding that the plaintiff's valuable and laudable services were rendered and received as acts engendered by deep-seated friendship, unaccompanied by any corollary understanding, implied or otherwise, that an obligation to compensate for them was thereby being incurred.

■ It was the province of the trial court to take into consideration not only the testimony but also all the inferences of fact reasonably to be drawn therefrom; and where the evidence is such that either one of two inferences may fairly be drawn, a fact question arises whose determination by the trial court must be sustained on appeal. (*Chichester* v. *Mason,* 43 Cal.App.2d 577, 585 [111 P.2d 362].)

■ Plaintiff asserts "the court's finding as to an intention on the part of the decedent to reward the appellant by means of a Will is utterly without foundation in the evidence, and cannot stand." Support for this finding could reasonably be inferred from paragraph III of the second cause of action of the plaintiff's complaint, wherein he alleges under oath a promise by Priester to leave him one-half his estate, indicating that plaintiff contemplated some reward in the will. This is also inferable from testimony by a witness for plaintiff, of Priester's declaration that he would take care of plaintiff at some later time.

On this same theme, plaintiff takes the position that in any event, he is entitled to recover by an action in *quantum meruit* because the legacy actually left him by Priester was insufficient compensation. He points out that this legacy, although valued at over $13,000 by the California Inheritance Tax Appraiser, is contingent in nature, so that he has in practical effect, taken nothing thereunder. This argument would be entirely tenable if the evidence showed, and the court had found, that there was an expectation by the parties that a just compensation would be paid the person rendering the services and that this would be effected by a provision in the will. ■ Under such circumstances (and for present purposes assuming, but in no sense deciding, that the contingent bequest to plaintiff was manifestly inadequate) the law implies a promise to pay the reasonable value of the services rendered when the promised compensation by will fails of fulfillment. (*Zellner* v. *Wassman,* 184 Cal. 80 [193 P. 84] ; *Estate of Rohrer,* 160 Cal. 574, 576 [117 P. 672, Ann. Cas. 1913A 479].)

But that is not the present case. For it is clear from an analytic reading of Finding V, which we have previously quoted, that such intended provision in the will was not considered by the parties to be the medium of paying an existing obligation to compensate for services rendered, since no such obligation was envisioned by the parties, but was simply an understanding that the extent and measure of the reward,

recognition, and remembrance of plaintiff in the will for his loyalty and assistance would be determined by Priester.

The court's finding that the services were rendered on a noncommercial basis and with no expectation by either party that a charge would be made therefor negatives any idea of a promise to compensate by will pursuant to any contract. It bespeaks, rather, an understanding that Priester would make plaintiff an object of his bounty as a faithful friend under whatever testamentary scheme he thought fitting.

Where services are rendered in the mere expectation of a legacy whose amount is to be at the entire discretion of the testator, without any contract, express or implied, to pay for the services, there can be no recovery for the reasonable value thereof. (*Moulin* v. *Columbet*, 22 Cal. 509, 510; *Lee's Appeal*, 53 Conn. 363 [2 A. 758]; *Grandin* v. *Reading's Admr.*, 10 N.J.Eq., 370; *In re Gilbraith's Estate*, 270 Pa. 288 [113 A. 361, 364]; *Frankenberger* v. *Schneller*, 258 N.Y. 270, 273 [179 N.E. 492]; *Messier* v. *Messier*, 34 R.I. 233 [82 A. 996]; *Anderson* v. *Houpt*, 43 Ohio App. 538 [184 N.E. 29]; 58 Am.Jur., Work and Labor, § 8. Anno. 54 A.L.R. 552.) "If services are rendered without the intent of making a charge therefor, or of creating a legal liability thereby, the fact that the person rendering them did so in the hope that the party receiving them would be grateful therefor, and would manifest such gratitude in some substantial form, such as a gift or legacy, does not give to the party rendering such services a right to recover a reasonable compensation therefor if such hopes are disappointed." (Page on Contracts, § 1446, p. 2474, quoted in *Kremmel* v. *Schnaufer*, 4 Wn.2d 242 [103 P.2d 38, 41].) The case last cited also notes with approval the following extract from *Collyer* v. *Collyer*, 113 N.Y. 442, 449 [21 N.E. 114]: "He doubtless expected that by his kindness to her she would be induced to make a favorable disposition of her property in his favor at her death. The fact that his expectation has been disappointed furnishes no ground for now stamping what at the time were acts of kindness and generosity with the mercenary features of contract and compensation."

As has been observed in *Howd* v. *MacGregor*, 102 Conn. 331 [128 A. 518, 519], "the line of demarcation is shadowy between those expressions of the decedent which are meant and understood merely to denote an intention to give of his bounty, and those which may fairly arouse an expectation of compensation for services rendered." In the instant case,

the court could legitimately conclude from the evidence and from the conversations as to his intentions attributed to Priester that plaintiff was relying solely upon the anticipated testamentary generosity of his friend Priester; that at the time of the proffered services he did not expect to be paid for them but to be remembered in the will. Under the holding of the authorities herein cited, a person who expects to be benefited by a legacy cannot later resort to an action for the reasonable value of his services where a mere expectation is shown and neither an express nor an implied contract to pay for the services is established.

The judgment is affirmed.

Moore, P. J., concurred.

Mr. Justice McComb, deeming himself disqualified, does not participate in the foregoing opinion.

A petition for a rehearing was denied November 9, 1954, and appellant's petition for a hearing by the Supreme Court was denied December 22, 1954.